AKERLY VS. VILAS, impleaded, etc.

*Vendor and purchaser: Foreclosure of mortgage for purchase-money — Equitable deduction for damages from slander of purchaser's title — Breach of covenant for " quiet and peaceable possession "— what constitutes.*

V. bought of A., at a speculative price, unimproved city lots, with the expectation (known to A.) of reselling them at an advance, if a railroad depot should be located near them. After such depot was so located, A. brought suit to set aside his deed, alleging that it had been obtained by fraud; and also procured himself to be made a defendant in an action for the partition of lands (his interest in which had passed to V. by the terms of said deed), and by his answer therein denied V.'s title. In consequence of these acts, V. was prevented from selling said lots at the prices then ruling, or until prices had greatly depreciated, when A. discontinued the action to set aside his deed and withdrew his answer in the partition suit. In an action by A. to foreclose V.'s mortgage for the purchase-money, *Held,*

1. That V. was *equitably* entitled to have the actual damages resulting to him from said acts of A. deducted from the mortgage debt.

2. That said acts were also a breach of A.'s covenant for " quiet and peaceable possession."

APPEAL from the Circuit Court for *Dane* County.

The report of the decision made by this court upon a former appeal from the judgment of the circuit court, found in 21 Wis., pp. 88–112, contains a sufficiently full statement of the pleadings herein. At the October term of the circuit court, 1867, the cause was brought to trial before a jury. Ch. 79, Laws of 1867. At the trial, defendant was refused permission to amend the second part of his answer, being his first counter-

claim (21 Wis., pp. 92, 93), by inserting allegations of facts to show specific damage resulting to him from plaintiff's refusal to transfer to him the certificates of shares in the Prairie du Chien Land companies (p. 91), pursuant to the agreement between defendant and the agent, Lord. The court also ruled out all evidence offered to sustain defendant's allegations as to a malicious denial and slander of his title by the plaintiff in his bill of complaint in the United States district court (wherein he sought to have the conveyance to defendant set aside on the ground that it was procured by fraud), and in the answer filed by him in the suit brought in the circuit court for Crawford county for a partition of the lands held by the Prairie du Chien Land Company No. 2 (21 Wis., p. 91), and all evidence as to damage resulting to defendant from the plaintiff's pleadings and proceedings in said suits; also all evidence of damage to defendant from plaintiff's neglect or refusal to transfer to him the certificates of stock in Prairie du Chien Land Company No. 2, and all evidence of the fact of such neglect or refusal, or of the value of such shares as compared with that of the lands bargained for, at the date of the contract. The court instructed the jury to determine the value of the Grant and Green county lands [which were a part of the consideration for the bonds executed by defendant to plaintiff (21 Wis., p. 89), but which plaintiff refused to convey (p. 91)]; and it also instructed them to find the amount due the plaintiff by deducting that value, with interest, from the amount due on the bonds and mortgage according to their terms; and that there were no other questions for them to consider in the case. The jury rendered a verdict accordingly, finding $21,218 due the plaintiff; a motion for a new trial was denied; and from a judgment upon the verdict, defendant appealed.

*Wm. F. Vilas*, with *Spooner & Lamb*, of counsel, for the appellant, argued various questions passed upon by the court in its former decisions herein. As to defendant's right to

recover damages by way of counterclaim, they argued substantially as follows :

1. Shares in the Prairie du Chien Land companies *were personal property.* Wadsworth on Joint Stock Companies, 173 ; Williams on Pers. Prop. p. 246 ; *Nicoll v. Ogden,* 29 Ill. 323 ; and see 1 Ohio St. 360 ; 13 N. Y. 159 ; 17 Wend. 676. There is nothing in *Durkee v. Stringham,* 8 Wis. 1, in conflict with these authorities. As the powers of attorney under which Dr. Lord acted did not authorize him to sell or to contract to sell the personal property of his principals, the deed, so far as it related to those shares, and the agreement made for the assignment of the certificates, were beyond his powers, and not binding upon his principals without subsequent ratification, nor upon *Vilas,* without his assent afterward given. *Dodge v. Hopkins,* 4 Wis. 630. The only evidence offered by the plaintiff was the bonds and mortgage, and the assignment by Mrs. Lord of her interest in them to the plaintiff in 1860. This assignment was evidence of a ratification by Mrs. Lord, and the bringing of this suit was a ratification by *Akerly.* Of the assent of *Vilas* to such ratification, no evidence was given on either side. Upon this state of the case, the court could do no *less* than to allow *Vilas* a deduction from the face of the bonds of the value of the shares at the date of the contract, as compared with the value of the land which he bargained for, and the circuit judge erred in not allowing him to prove the relative value of the shares, and to show that he had never received an assignment of the certificates.

In an action upon the bonds, plaintiff cannot disavow or repudiate the agreement made through Dr. Lord for the sale and transfer of the certificates. The breach of the agreement to transfer the certificates to *Vilas* afforded a good cause of action against Dr. Lord's principals. *Akerly* took Mrs. Lord's assignment of the bonds subject to any legal or equitable defense or counterclaim against her ; and the circuit judge erred in refus-

ing to allow *Vilas* to prove what the actual value of the shares was at the time when the certificates should have been assigned to him, and the damages he sustained by the non-assignment. The suggestion (21 Wis. p. 107), that the deed of *Akerly* and Mrs. Lord gave *Vilas* an *equitable interest* in the lands of the companies, and that an assignment of the certificates would have given him *nothing more*, and that consequently he can recover no damages for their non-assignment, cannot be sustained. We have shown that the shareholders had no equitable interest in the lands of the company, and, of course, an assignment of the certificates would pass no such interest. This will be more obvious, if we look at the effect of the covenants in the deeds, so far as they apply to the shares. These covenants are to be construed according to their subject-matter; and, so far as the shares are concerned, they go only to the title of the *shares*, and not to the title of the lands or personal property which formed the capital of the company. If the shares had been duly assigned to *Vilas*, the failure of the title of the company to all its lands would have been no defense for *Vilas* in an action against him for the purchase money. All he could ask was, that he should quietly enjoy as his own the *shares* which he purchased; and the value of the shares, or the value of the property owned by the company, was a question which he determined for himself, and with which the vendors of the shares had nothing more to do. The *dictum* that "the lands were the only consideration," was, therefore, an obvious mistake. The covenants in the deed, as to the shares, created no other obligations than would have arisen from an assignment of the certificates, for a covenant for quiet enjoyment, in the fullest terms, is *implied* in every conveyance or transfer of an *incorporeal* right. *The Mayor, etc., v. Mabie*, 13 N. Y. 151; *Seddon v. Senate*, 13 East, 63. The certificates, or shares themselves, like most other kinds of property, were susceptible of an equitable, as distinguished from a legal, ownership. The orig-

inal holders of the certificates, or the persons to whom they had been assigned in the mode pointed out in the articles of association, held the *legal* title to the certificates or shares. A person who had bought and *paid for* shares, but had not received such an assignment, would be the *equitable* owner of such shares. But a man who had bargained for shares and had simply agreed to pay for them, would not thereby become the equitable owner of them. If the shares were to be assigned before payment, an action might be maintained for a refusal to assign them; but while shares remain unassigned, it cannot be said that a man who has never paid for the shares is the equitable owner of them. Suppose he should die insolvent before paying for them, what then ?

But if it were true that the deed *did* transfer an equitable interest in the lands of the companies, and if an assignment of the certificates would give nothing more than such equitable interest, still the fact remains that *Akerly* and Mrs. Lord, by their agent (whose act they ratify), did agree to deliver to *Vilas* the certificates duly assigned, and thereby to vest in him the legal ownership of the *certificates*. But it seems to be assumed, as a matter of law, that no damages *could* result from a breach of the agreement. " A violation of a right, with a possibility of damage, forms the ground of an action." Per COWEN, J., 1 Hill, 487. But in this case *Vilas* offered to *prove* that he had sustained damages by the breach of the agreement to deliver to him the certificates duly assigned, and the court would not allow him to prove it. It is conceded that the possession of the certificates would have been *convenient*, and that the " trustees might perhaps have more readily acknowledged his rights, and that, in case of litigation, proof of his interest might have been more easily made." This would be enough, if there were nothing more, to sustain an action for their non-assignment. But there is something more. The proof offered by *Vilas* tended to show that the shares in question were about

a third in value of the whole property bargained for; that within one year after the purchase the whole property advanced so as to be worth in market $100,000 or more; that desiring at that time to make sale of the property, he not only was unable to have any voice in the company's affairs, but had no legal title to the certificates, and so could give none to a purchaser, and even the supposed equitable title, which it is said he got by the deed, was denied by the suit in the United States court, and by the answer of *Akerly* in the partition suit that denial was persisted in, until the shares, instead of being worth $20,000 or more, were not worth $700. And yet *Vilas* is told that he shall not show that he sustained some damage by the refusal to deliver to him the certificates duly assigned.

2. The suit brought by *Akerly* in the United States court (to say nothing of his intervention in the partition suit), was a breach of the covenant for *quiet enjoyment* contained in the deed. That covenant was, that the grantors the said premises, etc., "in the *quiet* and *peaceable* possession of the party of the second part, etc., would warrant and forever defend against the claims of all persons *lawfully* claiming the same, by, from, or under the parties of the first part, or by, from, or under any other person whomsoever." It is said on the other side, that nothing but ouster or eviction, actual or constructive, would be a breach of this covenant. That is the rule in an action on the covenant of warranty, which this would be if the words " quiet and peaceable" were left out; and the construction given by the plaintiff to the covenant makes those words of none effect. All the words in a contract shall have effect, if possible; and the question is, what is the meaning or effect of those words in this covenant? The covenant for quiet enjoyment goes to the possession, it is true, but it goes not merely to the fact, but to the character of the possession — engaging that it shall be quiet and peaceable. Is there any thing short of eviction or dispossession which will make the possession not

quiet and peaceable? In *Andrews v. Paradise*, 8 Mod. 319, the erection of a gate across a lane leading to the close, was held to be a breach of a covenant, that the covenantor would not do any thing to hinder, molest, or prevent the covenantee in the quiet enjoyment and possession of the land. In *Rashly v. Williams*, 2 Ventris, 61, the plaintiff sued on a contract, whereby it was agreed "that the said Rashly quietly and peaceably should have, hold, occupy, possess, and enjoy," for the term of one year, a certain tenement, excepting out of the demise, unto a certain Edward Knollis, lately a tenant of the premises, one small close, parcel thereof; and the plaintiff set forth that he entered into the premises, and put in his cattle, and that, before the year was out, the said Knollis sued him therefor in trespass, and recovered £20, etc., and so plaintiff did not hold the premises quietly, but was sued and disturbed, and compelled to pay as aforesaid. Defendant pleaded that he did not break his covenant, and upon that issue was joined, and found for the plaintiff, but judgment was arrested because the declaration was insufficient "in regard that it was not set forth that Knollis had any right."

In 3 Comyns' Digest, 268, it is said, "Of a covenant for enjoyment without interruption or molestation, it shall be a breach if the covenantor prosecute him in a court of equity." In *Hayes v. Bickerstaff*, Vaughan's Rep. 120, a case is cited in which it was agreed that lessee "should have, occupy and enjoy" certain lands, and it said, "Here is a covenant for enjoying during the term, the same with enjoying without *interruption* (for if the enjoyment be interrupted he doth not enjoy during the term), the same with enjoying without *any* interruption, the same with enjoying without interruption of *any* person." A case of *Brocking v. Cham* is then cited, and it is said: "This case was upon an assumpsit, and by as ample words, for the land was to be enjoyed without *any let*, which is equivalent to the words *quiete et pacifice*." In Viner's Abridg., Cov., p. 427,

a case is cited from Freeman's Rep. 122, where the fact that plaintiff could not *get* possession because a stranger had a paramount title, was held a breach of a covenant that plaintiff should "enjoy without any lawful let, suit or interruption;" and see on this point, *Sprague v. Baker*, 17 Mass. 590. In *Morgan v. Hunt*, 2 Ventris, 213, the covenant was, that lessee "should quietly and peaceably enjoy without any manner of interruption, molestation or disturbance," and the breach alleged was, that the lessor afterward exhibited a bill in chancery against the lessee, charging him with plowing up meadows, and the committing of divers wastes, whereby he was interrupted in his plowing, etc., and that afterward the bill was dismissed with costs, and so the defendant had broken his covenant. After verdict for plaintiff, motion in arrest, because " the suit in chancery was not touching the lessee's estate or title, but for waste which he ought not to do; and though the suit might be groundless, yet, it not relating to his title or possession, was no breach of the covenant;" and judgment was stayed for that reason. *Hunt v. Danvers*, 1 T. Raym. 371, was assumpsit on a promise that plaintiff should quietly receive all tithes, etc., without any interruption or molestation. Breach, that the defendant did not permit, etc., but did prosecute two suits in the Exchequer Chamber *ad damnum* £300. On non-assumpsit pleaded, there was verdict and judgment for the plaintiff; and on error the sole question was, whether a suit in equity was a breach of the agreement, such as a court of law can take notice of, and the court said: " I have considered that book, and others, and do conceive such suit is a disturbance; for, 1. *Ex vi termini*, when a man is in possession, to be subpœnaed to appear in chancery is a disturbance." Rawle, in his work on Covenants, page 188, says: " At one time there seems to have been some doubt as to whether a suit in equity, by which a purchaser was disturbed, came within the scope of a covenant for quiet enjoyment against *disturbances generally*," but adds, "this is now well

settled in the affirmative;" and Sugden says the same thing, 2 Sug. on Vendors, 96. In Rawle, p. 188, is a note referring to Winch's Entries for a declaration in which a disturbance by a chancery suit is assigned for breach. In this precedent the covenant was, that the lessee "should in peace and quietness have, hold and enjoy certain premises theretofore in the occupation of one M., without any let, hindrance, or disturbance;" and the breach was, that afterward the lessor filed in chancery a bill against the lessee, in which he alleged that the demise was in fact made in trust and for the use and benefit of the lessor, and for the purpose of trying the right and title of said M., and that, upon the hearing, said bill was dismissed. General demurrer to the declaration, and judgment for the plaintiff. Mr. Rawle gives (pp. 182, 183) the usual forms of the covenant for quiet enjoyment in English deeds. By one of these forms, the covenantee is to hold and enjoy "without any' let, *suit*, trouble, denial, eviction, interruption, claim, or demand whatsoever, of, from, or by the said grantor or his heirs, or any other person whomsoever." The other form is, that the premises shall be held and enjoyed "without let, *suit*, eviction or disturbance by the vendor or his heirs, or any other person whomsoever." But as the word "suit" does not appear in the covenants or promises in any of the cases above referred to, in which a suit was held to be a breach, we infer that the scope of the covenant is not enlarged by the use of that word. So as to the other words, "let, interruption, disturbance," etc., if "to enjoy" means the same with enjoying without any *interruption*, and to "enjoy without any let," is only equivalent to the words "*quiete et pacifice*," as is said in Vaughn's Rep., *supra*, we infer that the clause "without any let, suit," etc., is only an instance of the redundance and tautology so common in English conveyances. Mr. Rawle says generally, "that any apt words showing the intent of the parties will create such a covenant; and on this side of the

Atlantic it is often, if not usually, expressed in the briefest manner." It is scarcely necessary to say here, that the cove-vant, however generally expressed — that is, although it was not only against the acts of the covenantor, and those claiming under him, but against the acts of all persons whomsoever — applies only to the acts of those claiming by *title*, subject, how-ever, to the exception that it shall extend to the act of the covenantor himself, done under color or mere *claim* of title. Rawle, 184–6. Against the party himself, the court will not consider the word "lawful." 2 Show. 416. In pages 189 to 198, Mr. Rawle refers to a number of cases in which the generality of the covenant has been restrained by various forms of expression, such as claiming through the grantor or his heirs, or "by his or their acts, means, consent, etc., or default," or "claiming against them," etc., and continues: "As it thus sufficiently appears that the scope of this covenant depends, in so many cases, upon the particular words employed in its ex-pression, it will readily be seen that it is impracticable to lay down a universal rule as to what will cause its breach. It has been constantly confounded with the covenant of warranty; so much so that in some cases the covenant has been spoken of as a covenant for quiet enjoyment, while in fact it was a covenant to warrant and defend. It is somewhat generally said in the United States, 'that the covenants for quiet enjoy-ment and of warranty are broken only by an eviction,' but in order to show this not to be universally true of the former, it is only necessary to refer to the form as constantly (?) used, stipulating against 'any let, suit, interruption,' etc. Such a distinction was noticed by the late Chief Justice GIBSON. 'A covenant for quiet enjoyment, which resembles the modern covenant of warranty, differs from it in this, that the former is broken by the very commencement of an action on the better title.'" But in his chapter on the covenant of warranty (page 237), he quotes again those words of GIBSON, and says:

"This remark must be applied to the covenant for quiet enjoyment as usually expressed at length in English conveyances, in which 'any let, suit, interruption, disturbance,' etc., are expressly covenanted against. But where, as is often the case in this country, the latter covenant is briefly expressed by the words 'that the grantee and his heirs shall quietly enjoy the premises,' etc., the remark of the learned chief justice would lose its application, as the weight of American authority is decisive that to cause a breach of a covenant thus expressed, an eviction, or something equivalent to it, is indispensable." We do not suppose that Mr. Rawle means by this, that a covenant for quiet enjoyment has no effect unless the words " without any let, suit," etc., are used, for that would be absurd; but that the *commencement* of a suit by a *stranger* upon the better title is not a breach of such a covenant. It was in a case where the breach of covenant arose from the act of a stranger, that the words quoted from Chief Justice GIBSON were used; and the American authorities which Mr. Rawle vouches for the doctrine, are all cases of that kind (3 Johns. 471; 5 id. 120; 13 id. 236); and some of them more guardedly state, as Greenleaf does (2 Ev. 243), that there must be an entry upon the grantee, or expulsion from, or some actual disturbance in, the possession. We do not find a single case in this country in which the alleged breach of the covenant was a suit brought by the *covenantor* himself, impeaching the estate or title of the covenantee in possession. A case of that kind was not within the mind of the court in the New York case referred to, and we presume not in Mr. Rawle's. If the suit by a *stranger* is groundless, or not upon a good title, it is of course no breach of the covenant for quiet enjoyment, unless the covenant was expressly against any disturbance by him; and if the stranger's action is upon a better title, it will result in an eviction (actual or constructive), and give the grantee an action on the covenants either of warranty or seizin, or for quite enjoy-

ment. There is no reason, therefore, why the mere commencement of a suit by a *stranger*, even upon a good title, should be a breach of the covenant (unless it run expressly against that stranger's 'acts), and many reasons why it should not be. But if to be subpœnaed in chancery to answer concerning the estate or title is a disturbance of the possession, as we have shown from the best authorities, then a groundless suit of that kind by the covenantor himself is a breach of the covenant. The obligation he has assumed forbids that he should be at liberty to disquiet and disturb his grantee by groundless actions, with no other liability than to pay costs. The covenantor's suit, if wrongful, could *not* result in an eviction of the covenantee; and to require proof of eviction would allow the covenantor to break the covenant, by suit, with impunity. It should be remembered, also, that the shares in the land companies were mere *incorporeal* rights, of which there could be no manual possession, and no actual ouster or eviction.—An objection has been taken to the counterclaims founded on a breach of the covenants, because the covenants are joint. Dr. Lord is dead, but it is said that an action could not be brought on the covenants against *Akerly* alone. There are two answers to this objection: (1.) Mrs. Lord was never bound by the covenants so far as they related to her *real* estate. The statute was then, as now, that "husband and wife may by their joint deed convey the real estate of the wife, in like manner as she might do by her separate deed if she were unmarried; but the wife shall not be bound by any covenant contained in such *joint* deed." R. S. 1849, p. 326; 1858, p. 538. (2.) A covenant which is joint in itself shall be taken severally, when the breach assigned is a separate act of *one* of the parties. *Coleman v. Sherwin*, Comb. 163; Platt on Cov., in Law Lib., vol. 1, p. 53, note; 9 Met. 68.

We think this court should instruct the court below that *Akerly's* suit in the United States court, impeaching the title of *Vilas* to the real estate conveyed to him, was a breach of

the covenant in the deed, and the evidence offered by *Vilas* on that point should be received.

3. The facts stated in the answer show an equitable defense, if they fall short of showing a legal one. If the contract had been executory, and the vendors had withheld the deed after the time appointed for making it, until the value of the property had fallen materially, equity would not compel *Vilas* to take the property and pay the contract price. But the bill in chancery to set aside the conveyance placed *Vilas* in a worse condition, during the whole time of its pendency, than if he had held an executory contract, which the vendors were only neglecting to perform. With a land contract recorded, and his equitable rights under it unchallenged, he would have been far better able to dispose of the property, than with a conveyance, impeached by a suit of which everybody in the neighborhood had notice. As to the equity of compelling him to pay the contract price for the property after it has become worthless, it makes no difference whether he held a title bond and the vendor refused to make a deed, or whether he held a deed, and the vendor, by suit which prevented his selling the estate, denied that the deed was valid. In the one case as much as in the other, the property does not really and substantially come under the dominion of the purchaser, until the change in value has occurred. The loss in this case arises out of the fact that the property was not sold when it had a marketable value, but was kept out of the market until it became worthless. But *Vilas* desired to sell the property, and has in no wise contributed to the loss. It was the repudiation of his title by the groundless suit of *Akerly*, which has caused it, that a loss must fall upon one or the other of the parties. *Akerly* is the one, therefore, who in equity must bear the loss. He has no right to call upon *Vilas* to bear it for him. " Every grant of any right, interest or benefit carries with it an implied undertaking on the part of the grantor that the grant is intended to

be beneficial, and that, so far as he is concerned, he will do no act to interrupt the free and peaceable enjoyment of the thing granted." SHAW, C. J., 4 Cush. 24. In bringing a groundless suit to set aside the conveyance, the grantor not only broke his implied agreement, which was in part the consideration of the grantee's promise to pay, but he took the ground that the property was still his, and after standing upon that ground till the property, kept by him in the meantime from the control of the grantee, was not worth contending for, he could not turn round and say, " this is your property which has depreciated; now pay me what the contract called for." The grantor in such a case is dealing directly with the thing granted; he is putting to the hazard of destruction the very consideration of the notes he holds; and if by his ill-advised act he renders his own grant valueless, and destroys the consideration of the notes, he must lie down in the bed which he has made. See *McNeil v. Magee,* 5 Mason, 244.

*Finches, Lynde & Miller,* for respondent, contended that every material question in the cause had already been passed upon by this court in its opinions upon former appeals. As to the question whether the plaintiff had violated his covenant to warrant and defend the defendant in the peaceable and quiet possession of the premises conveyed, they argued that "the scope of the covenant of quiet enjoyment depends, in many cases, upon the particular words employed in its expression." Rawle on Cov. 80. When the grantee desires to protect himself against acts short of an actual eviction, the words constantly used are, " against any let, *suit,* interruption, disturbance," etc. The decisions are unanimous that for a breach of a covenant of quiet enjoyment in the form used in the deed to defendant, there must be proof of eviction by paramount title. *Hall v. Dean,* 13 Johns. 105; *Kerr v. Shaw,* id. 236; *Coble v. Wellborn,* 2 Dev. (N. C.) 388.

Akerly vs. Vilas, impleaded, etc.

Dixon, C. J. The question of the breach of the covenant for *quiet enjoyment* by the prosecution by the plaintiff of the action in the district court of the United States to set aside the deed, and by his defense in the partition suit, and the question of the *equities* of the defendant *Vilas*, growing out of the same prosecution and defense, to reduce or extinguish the demand of the plaintiff, are wholly untouched by the former decisions of this court. This will appear from an examination of those decisions as reported in 15 Wis. 401, and 21 Wis. 88. To say nothing, therefore, of the rights of the defendant arising from the refusal to deliver the certificates of stock in the land companies, which is the point upon which I dissented from the last decision, and on which, as it seems to me, that decision directly conflicts with the first, we have these two questions still open and undecided; and since with regard to them the court have come to a unanimous conclusion favorable to the defendant, it will become unnecessary for us to consider any of the other questions argued in the case. On these two we are of opinion that the answer states valid grounds of defense, in support of which the evidence offered by the defendant should have been received.

Of the authorities cited by the learned counsel for the plaintiff, on the first question, it is only necessary to observe, that none of them were cases involving the question here presented. They were all cases where suits had been brought or title claimed by a *third person*, or one *not bound* by the covenants of the deed. They are not, therefore, evidence of what the opinion of the court was, or would have been, of the question here involved, had the same been presented; and the general remarks of the court, quoted by counsel, are, by a familiar rule in the interpretation of judicial decisions, not to be applied beyond the facts of the case in which they are made, unless the new case, though varying somewhat in its facts, clearly authorizes such application. It is undoubtedly true that no action

will lie for a breach of the covenant for quiet enjoyment, where the title is claimed or suit commenced against the covenantee by a *stranger* to the deed, without alleging and proving an actual eviction or ouster. The covenant is not understood to protect the grantee against every such claim or suit, however unfounded, and for which the covenantor is in no way responsible. In such case, it is only upon a lawful eviction or ouster, on a valid title existing before or at the date of the covenant, that the grantee has his remedy for the breach; and to this effect merely are the authorities cited. But in this case the question is, whether a suit to avoid the deed and regain possession of the land, commenced by the *covenantor himself*, with "no reasonable or probable cause of action," as alleged in the answer, and prosecuted "willfully, wrongfully and maliciously," to the great pecuniary damage and loss of the covenantee, is a breach of the covenant. We are satisfied that it is, and that the distinction between such a suit, as constituting a breach, and suits by third persons, is both on reason and authority precisely that claimed by the learned counsel for the defendant. And on this point we are content to leave the question where the argument of counsel leaves it, merely adding that we feel obliged, when, by the research and learning of counsel, in the examination of a question of such intricacy and importance, we are relieved from the labor of entering upon the investigation for ourselves.

And the same observation may be made of the other question. The *equities* of the defendant, growing out of the wrongful prosecution of the action in the district court, and of the defense in the partition suit, are placed in so clear a light by the argument, that they cannot be made clearer by us. It seems impossible, on the facts stated, that a purchaser may be thus wantonly harassed and vexed by his grantor, his title disturbed and rendered worthless, and all profits and advantages of his purchase lost; and yet, when sued by the grantor in a court of equity for

the purchase money, he should have no remedy for the injuries he has sustained. We do not think this can be so, but on the contrary, by the general principles governing the court, that the defense in this respect is good. He who asks equity must do equity. Any conduct on the part of the plaintiff, with regard to the subject of the action, which was inequitable or unjust toward the defendant, and resulted in actual damage to him, and especially when such damage was caused vexatiously or intentionally by the plaintiff, may always be shown as matter of defense in a court of equity.

On the question of the position of the defendant here being inconsistent with that occupied by him in the former suits, it is obvious, with respect to these defenses that it is not so. His title was then disputed, and he was charged with fraud. He insisted that he had good title, and denied the fraud. The plaintiff, by his voluntary discontinuance of the action to rescind, confessed that it was unfounded, or prosecuted without probable cause. At least it would be so held in an action for malicious prosecution. See *Burhans v. Brown*, 19 Wend. 417, and cases cited. The plaintiff, then, by the discontinuance of his former action and the commencement of this, has in fact changed his position, while the defendant, with respect to the questions we are considering, has not. The defendant alleges that in the prosecution and defense by the plaintiff, of the actions in which his (defendant's) title was denied, but which he then insisted upon, and which the plaintiff has since confessed that he had, the plaintiff was guilty of a breach of *his* covenant for quiet enjoyment, and caused damages to the defendant, which, in the judgment of a court of equity, ought to be deducted from the demand of the plaintiff for the purchase money. In this there is certainly no inconsistency on the part of the defendant.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.