JANES v. PADDELL et al.

(Supreme Court, Appellate Term. December 15, 1911.)

1. LANDLORD AND TENANT (§ 308*)—DISPOSSESSION PROCEEDINGS—TENDER OF RENT—EVIDENCE.

Where, in dispossession proceedings for nonpayment of rent, the tenant claimed that checks for rent had been tendered and refused, the checks were admissible to show that the tenant had made a bona fide attempt to pay the rent as agreed.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 308.*]

2. ELECTION OF REMEDIES (§ 15*) — EJECTMENT — SUMMARY PROCEEDINGS AGAINST TENANT.

Where a landlord brought ejectment against his tenant, claiming condition broken and failure to pay rent, thereby treating the tenancy as at an end and the tenant as a trespasser, he thereby made an election of remedies, and could not while the ejectment was pending maintain summary proceedings to eject the tenant for failure to pay rent.

[Ed. Note.—For other cases, see Election of Remedies, Dec. Dig. § 15.*]

3. LANDLORD AND TENANT (§ 311*)—EJECTMENT—WRIT OF ASSISTANCE.

The commencement of ejectment by a landlord against his tenant for condition broken amounts to a re-entry by the landlord and terminates ab initio the tenant's estate, and, if the tenant continues to remain in possession, he may be dispossessed by a writ of assistance which will follow the rendition of a judgment in favor of the landlord in the action of ejectment.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 311.*]

4. LANDLORD AND TENANT (§ 298*)—SUMMARY PROCEEDINGS—NONPAYMENT OF RENT.

Where a tenant continuously offered to pay rent, but the landlord refused to accept the same, he could not maintain summary proceedings to recover possession for nonpayment of rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 298.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Jane M. Janes against Timothy F. Paddell and others. From a final dispossession order of a Municipal Court of the city of New York, defendant Paddell appeals. Reversed and dismissed.

See, also, 67 Misc. Rep. 420, 122 N. Y. Supp. 760.

Argued before SEABURY, GUY, and COHALAN, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Everett V. Abbot, for appellant.
Frederick L. C. Keating, for respondent.

SEABURY, J. This is a summary proceeding to recover the possession of real property on the ground of the nonpayment of rent. The proceeding resulted in a final order in favor of the landlord. The petition is dated June 29, 1911, and alleges that there was then due and unpaid the sum of $5,000 which had accrued as rent during a period beginning September 1, 1909, and including June, 1911. The answer of the tenant admits that the rent has accrued, but denies the allegation of the petition that the rent has not been paid "except so far as that he admits that the landlord has prevented the tenant from paying over to her the various sums of money" alleged to be due as rent. The answer also sets up two separate defenses. The first defense alleges that the landlord has waived payment of the rent. The second defense alleges that the rent accruing for the period mentioned has been paid to the tenant's use by some person or persons to the tenant unknown. The answer also pleaded a counterclaim.

[1] Although the record in this case discloses several erroneous rulings excluding proper evidence offered on the part of the tenant, it appears that in October, 1909, the tenant tendered the rent then due in cash, and that the landlord refused to accept it, and subsequently, at the end of each month, the tenant sent a check for the rent then due to the landlord or her agent, and that in each instance the check was returned and its acceptance refused. The checks themselves were offered in evidence by the counsel for the tenant in order to show that the tenant made a bona fide attempt to pay the rent reserved in the lease as it accrued, but, upon objection being made that the checks were "incompetent and irrelevant," the court excluded them. The tenant also established that the landlord had commenced an action of ejectment to recover the possession of the premises in question on the ground of condition broken in the failure to pay rent, and that the landlord had also brought an unsuccessful summary proceeding against the tenant on the alleged ground that the latter was holding over after the expiration of his term.

[2] If we disregard the errors in the rulings upon the questions of evidence and attempt to get at the merits of the case, we must first consider whether the landlord prior to the institution of the present proceeding had elected to pursue a remedy inconsistent with the institution of this proceeding. "The doctrine of election, usually predicated of inconsistent remedies, consists," said Judge Gray in Mills v. Parkhurst, 126 N. Y. 89, 93, 26 N. E. 1041, 1042, 13 L. R. A. 472, "in holding the party to whom several courses of action were open for obtaining relief to his first election, where subsequently he attempts to avail himself of some further and other remedy not inconsistent with, but contradictory of, his previous attitude and action upon his claim. The basis for the application of the doctrine is in the proposition that where there is by law or by contract a choice between two remedies, which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the

other." The election of remedies is indicated, not merely by the form of the action, but by the cause of action itself. "This choice," says Pomeroy, "does not relate to the external form of an action. It relates to the very cause of action itself—to the unchangeable rights which are to be protected and enforced by the judicial proceeding." Code Remedies, § 110. When there are two existing and substantially inconsistent remedies, the adoption and pursuit of one of them by a party excludes him from the benefit of others. Crossman v. U. R. Co., 127 N. Y. 34, 27 N. E. 400, 13 L. R. A. 91. This rule applies in cases arising between landlord and tenant. Judge McAdam in giving examples of cases where the doctrine applies states upon the authority of Stuyvesant v. Davis, 9 Paige, 427, that:

"After bringing ejectment to enforce a forfeiture, the landlord cannot hold the tenant other than as a trespasser." 2 McAdam on Landlord and Tenant (4th Ed.) p. 1053, § 300.

The action of ejectment which the landlord instituted against the tenant was upon the ground of condition broken, and the institution of such an action necessarily terminated the relation of landlord and tenant. At common law, when the landlord sought to take advantage of a breach of condition, which breach worked a forfeiture, he made an entry upon the land. The theory upon which this was done was that it required as solemn an act to defeat as to create an estate. The effect of such an entry was—

"to reduce the estate to the same plight, and to cause it to be held on the same terms as if the estate to which the condition was annexed had not been granted." 2 Washburn on Real Property, p. 14.

It is now provided by section 1504 of the Code of Civil Procedure that:

"When six months' rent or more is in arrear, upon a grant reserving rent, or upon a lease of real property, and the grantor or lessor, or his heir, devisee, or assignee, has a subsisting right by law to re-enter for the failure to pay the rent, he may maintain an action to recover the property granted or demised, without any demand of the rent in arrear, or re-entry on the property."

This section of the Code, while differing somewhat in phraseology, is substantially a re-enactment of section 30, tit. 9, c. 8, pt. 3, 2 Rev. St.

In commenting upon the provision of the Revised Statutes referred to, Dwight, C., in Samson v. Rose, 65 N. Y. 411, 417, said:

"In the lease in controversy in the present case, there was an express agreement that the landlord might re-enter for nonpayment of rent. If there had been an actual re-entry for condition broken at the time when the action of ejectment was brought, the title of the Tripps (tenants) would have been defeated ab initio, and the land, with all its accretions, would have been vested in the plaintiff. As the commencement of the action is made by the above cited statute equivalent to a re-entry, the landlord must be conclusively presumed to have taken possession at the moment of the service of the complaint in this action."

When the right of distress for rent existed, it was repeatedly held both in England and in this state that the landlord, after treating the occupier of the land as a trespasser by suing him in ejectment, could

not afterwards distrain upon him for rent.    Bridges v. Smyth, 5 Bing. 410.

In Jones v. Carter, 15 M. & W. 718, it was held that, when a lessor served a declaration in ejectment upon the lessee, he could not sue for rent or covenants broken, although the action of ejectment had not been determined.   In the course of the opinion in that case Baron Parke said:

> "Without inquiring whether an ejectment be a real action, the bringing of which and the counting in which would, according to the authority of Lord Coke, be a determination of an election between two remedies, it seems to us that so distinct and unequivocal an act must, independently of any technical reason, be a final determination of the landlord's option; for after such an act, by which the lessor treats the lessee as a trespasser, the lessee would know that he was no longer to consider himself as holding under the lease, and bound to perform the covenants contained in it, and it would be unjust to permit the landlord again to change his mind, and hold the tenant responsible for the breach of duty after that time."

The remarks of Chancellor Walworth in Stuyvesant v. Davis, supra, are significant in this connection.   That was a case where the landlord had commenced an action of ejectment against his tenant to enforce a forfeiture for the nonperformance of a condition of the lease, and then commenced an action in equity to restrain the tenant from collecting and the subtenant from paying to the tenant any rents due or to become due.   In the course of his opinion the chancellor said:

> "If the complainant elects to proceed at law to enforce the forfeiture of the lease for the nonpayment of the taxes and assessments, he cannot in the meantime treat the lessee as his tenant and rightfully in possession of the premises, so as to obtain an equitable claim to the accruing rents by virtue of his lease.   For by bringing an ejectment suit for the forfeiture he has chosen to treat the lessee and his subtenants as trespassers from that time. The claim to the accruing rents, therefore, is wholly inconsistent with his proceeding at law to enforce the forfeiture."

Again in the same opinion the chancellor said:

> "While the landlord is proceeding in his ejectment suit to enforce the forfeiture, this court will not entertain a bill to give to him a remedy for the recovery of his rent, or his damages for the nonpayment of the assessments, which remedy is wholly inconsistent with that proceeding."

In serving a complaint in an action of ejectment upon the tenant, in which the landlord claimed a forfeiture and a termination of the tenant's estate, the landlord irrevocably precluded himself from subsequently asserting that the relation of landlord and tenant existed between him and the tenant.   The ejectment action commenced in September, 1909, treated the tenant as a trespasser.   The assumption of such a position was absolutely inconsistent with the assertion by the landlord in this proceeding that the relation of landlord and tenant was existing in June, 1911, when these proceedings were instituted. The ejectment action disaffirmed the lease.   The dispossess proceedings affirmed the lease.   In the language of Buller, J., in Birch v. Wright, 1 T. R. 378, the landlord "cannot be permitted to blow both hot and cold at the same time."

The court below held that the commencement of the ejectment action was not inconsistent with maintaining summary proceedings to dispossess the tenant on the ground "that the proof of an action in equity by the landlord in this proceeding cannot be held to be an election on her part." It is sufficient to overcome this reasoning to assert the elementary proposition that the action of ejectment is an action at law, and not in equity. Nor is the case of Houston Mercantile Co. v. Powell & King, 72 Misc. Rep. 358, 130 N. Y. Supp. 274, at all analogous to the case at bar, as the court below supposed. While it is true "that an election of remedies is determined by the commencement of an action and not by the result of it" (Matter of Garver, 176 N. Y. 386, 68 N. E. 667), the doctrine of election applies only when a choice is made between two remedies which proceed on opposite and irreconcilable claims of right. In the case of Houston Mercantile Co. v. Powell & King, supra, the court held merely that there was no such irreconcilability between an action in equity asking the court to declare a lease annulled and the institution of dispossess proceedings because the action to have the lease annulled was not equivalent to a rescission of the lease. In the case at bar the nature of the remedies pursued by the landlord are entirely different.

[3] The legal effect of the commencement of the action of ejectment on the ground of condition broken is both in legal theory and by statutory enactment equivalent to an actual re-entry by the landlord and terminates ab initio the estate of the tenant. If in spite of such termination of the tenant's estate he continues to remain in possession, the law provides the method for his dispossession by writ of assistance which as a matter of right will follow the rendition of a judgment in favor of the landlord in the action of ejectment. Summary proceedings cannot, under such circumstances, be invoked against the tenant on the ground of his failure to pay rent because such a proceeding can only be predicated upon the existence of the relation of landlord and tenant. While both remedies (i. e., the action of ejectment on the ground of breach of condition by the tenant and summary proceedings) seek the same object (i. e., the dispossession of the tenant), they are fundamentally antagonistic and irreconcilable in legal theory. The commencement of one (ejectment) terminates ab initio that relation of landlord and tenant, the existence of which is a sine qua non to the institution of the other (summary proceeding).

We are of the opinion, therefore, that the institution of the action of ejectment constituted an election by the landlord to pursue a remedy inconsistent with the right to maintain summary proceedings, and that such election constitutes a bar to the present proceeding.

The counsel for the landlord contends that, even though there has been an election of remedies, the landlord is entitled to a final order in her favor because of the nonpayment of rent by the tenant. This proposition is self-contradictory. If there has been an election of remedies by the landlord by reason of the commencement of the action of ejectment, such an election necessarily precludes the landlord from instituting this proceeding. The landlord being thus barred from instituting this proceeding, it is incomprehensible that she is en-

titled to a final order in her favor. If, however, for the sake of argument, we treat this proposition as a paradox, it does not aid the landlord. The evidence shows that the tenant tendered the rent, and that it was refused, and that he subsequently sent the rent to the landlord at the end of each month, and that it was each month returned to the tenant. On one occasion when the rent was tendered in cash to the landlord she refused to accept it, saying: "I have already received the rent." And, upon being asked at that time from whom she had received it, she replied:

"I don't know who it was, but I know my son-in-law called on me and said he was given a check for the month's rent, and deposited it at the Northern Bank to my account."

On the trial an attempt was made by the counsel for the tenant to ascertain who it was who had paid the rent, but this attempt was frustrated by the rulings of the trial judge. While payment by one of the debt of another does not operate to discharge the debtor unless the payment was made on behalf of the debtor, it is evident, I think, that a landlord cannot be permitted to refuse rent from the tenant, and then dispossess the tenant for the nonpayment of the rent. The tender of the rent is under such circumstances equivalent to performance of the condition to pay rent. This principle has long been recognized. In Sheppard's Touchstone, p. 142, it is said:

"If lands be granted on condition to pay money, and the money is tendered according to the condition, but either nobody is ready to receive it, or it is refused, this is a good performance of the condition. And, after a man hath once refused the money so tendered to him according to the condition, he hath no remedy in law to recover it, except it be money lent upon a mortgage."

[4] In view of the tender and willingness of the tenant to pay the rent and the repeated refusals to accept it by the landlord, we think that it is evident that she should not be permitted to predicate proceedings to dispossess the tenant upon the fact that the rent has not been paid.

Counsel for the respondent insists that the final order rendered against the tenant and in favor of the landlord cannot be disturbed. Thus in his brief he says:

"If it were true that the ejectment would bar these proceedings and that these proceedings (by demand necessary in order to bring them) bar the ejectment, we would then have the curious situation in which the landlord would be without possession, without rent, and without a remedy to procure either. She could not get possession by ejectment since demand for rent, and the summary proceedings would bar her. She could not get her rent since there would be no lease and no rent would be due; neither could she for the same reason have recourse to summary proceedings."

We do not think that this statement accurately describes the situation of the landlord.

If, however, the counsel for the landlord correctly describes the situation of his client, her present position is the result solely of her own acts and her effort to pursue inconsistent and irreconcilable remedies, and we are under no obligation to do violence to established rules of law to protect the landlord from her own blunders in proce-

dure, especially as it seems to us that she has been led into these blunders in her effort to subject her tenant to a series of vexatious attacks. It does not appear to us that her situation is one of undue hardship. She complains that she has not been paid the rent, and yet she admitted that she has received rent from some one other than the tenant. She was offered the rent by the tenant and deliberately refused it, apparently for no other purpose than to make it appear that the tenant was in default, so that she might dispossess him. She has instituted ejectment proceedings which are still pending, and the present is her second attempt to dispossess the tenant; her first attempt being unsuccessful. Janes v. Paddell, 67 Misc. Rep. 420, 122 N. Y. Supp. 760.

In ejectment she claims the lease terminated in September, 1909, while in these proceedings she asserts that it is valid and subsisting in June, 1911. By reason of her inconsistent and vexatious course, she has involved her tenant in legal difficulties from which she now insists he shall not be relieved, because, if he is, she can think of no new course open to her which would not be inconsistent with some attitude which she has already assumed. In view of the conclusions which we have reached, it is unnecessary for us to consider the ruling of the trial judge in dismissing the defendant's counterclaim.

It follows, therefore, that the final order appealed from should be reversed and the proceeding dismissed, with costs to the tenant. All concur.