### PADDELL v. JANES et al.

(Supreme Court, Special Term, New York County. April 22, 1915.)

LANDLORD AND TENANT ⊂⊃130—EXPRESS COVENANT AGAINST EVICTION BY SUIT—BREACH.

    Where a lessor covenanted in the lease that the tenant during the term should "peaceably and quietly have, hold, and enjoy the demised premises, without any manner of let, suit, trouble, or hindrance of or from the said party of the first part, or any other person whomsoever," the unreasonable bringing of an ejectment suit against the tenant and the prosecution thereof, causing him serious pecuniary damage, constituted a breach of the covenant, giving rise to a right of action in the tenant, without any actual abandonment or surrender of possession by him, or his physical expulsion from the premises.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. ⊂⊃130.]

Action by Timothy F. Paddell against Elisha Harris Janes, executor, and Martha Ridgway Weed, executrix. On motion by defendants for judgment on the pleadings. Denied.

Keith & Abbot, of New York City (Everett V. Abbot, of New York City, of counsel), for plaintiff.

Frederick L. C. Keating, of New York City (Henry Amster, of New York City, of counsel), for defendants.

DAVIS, J. This is a motion by defendants for judgment on the pleadings. The action is brought by the lessee against the executor and executrix of lessor for damages for breach by the defendants and their testatrix, Jane M. Janes, of a covenant for quiet enjoyment contained in a lease for 21 years of premises on the south side of Forty-Second street, near Seventh avenue, New York City. The lessor was Jane M. Janes, above mentioned. The covenant in question is as follows:

"And the said party of the first part does covenant and agree that the said party of the second part, upon paying the rent above reserved and performing the covenants and agreements aforesaid on his part, shall and may at all times during the said term hereby granted peaceably and quietly have, hold and enjoy the said demised premises without any manner of let, suit, trouble or hindrance of or from the said party of the first part or any other person whomsoever."

The complaint alleges that the plaintiff paid all the rent due and performed his part of the covenants; that on or about September 3, 1909, the said Jane M. Janes, without reasonable cause therefor, falsely and maliciously pretended (1) that plaintiff as tenant had failed to perform the covenants; (2) that the lease therefore had terminated on or before September 1, 1909; (3) that plaintiff was holding over without her permission as landlord; (4) that pursuant to these pretenses she wrong-

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fully and vexatiously made application to the Municipal Court of the City of New York, Third District, for a final order to remove the plaintiff as tenant from the possession of the premises in question and thereafter wrongfully and vexatiously prosecuted her application until it was finally denied by the Municipal Court and until the final order thereupon was affirmed upon appeal by the Supreme Court, Appellate Term. It is also alleged that with like pretenses and in like manner the said Jane M. Janes brought an action in the Supreme Court on or about August 12, 1910, to recover possession of the premises in question with damages in the sum of $12,000 for withholding possession of the premises since September 1, 1909, and wrongfully and vexatiously maintained said action until her death, and that thereafter the other defendants, as her executor and executrix, wrongfully and vexatiously continued to maintain the action until it was discontinued upon their application upon payment of costs, but against the opposition of the plaintiff. It is also alleged that thereafter the said Jane M. Janes, with like pretenses and in like manner on or about the 2d day of June, 1911, applied to the Municipal Court for a final order to remove the plaintiff as tenant from the possession of the demised premises for the nonpayment of rent accruing after the 1st day of September, 1909, and thereafter wrongfully and vexatiously prosecuted said application until it was finally denied and the proceeding finally dismissed by the Supreme Court. The complaint also alleges the death of said Jane M. Janes on the 29th of August, 1913, and the appointment and qualifying of the defendants as her executor and executrix.

It thus appears that three unsuccessful and inconsistent proceedings were brought by the lessor against the lessee to deprive him of his possession of the demised premises, to wit: (1) On September 3, 1909, in the Municipal Court, the application for a final order to remove him in which she claimed a forfeiture on September 1, 1909, because of failure to pay rent; (2) on August 12, 1910, the action of ejectment in the Supreme Court in which she claimed a forfeiture on September 1, 1909, because of failure to pay rent, and $12,000 damages for withholding possession since September 1, 1909; and (3) on June 2, 1911, the second application to the Municipal Court for a final order to remove the lessee from possession of the premises because of the failure to pay rent accruing since September 1, 1909. According to the complaint these suits were baseless, malicious, and wrongful, and therefore constituted a breach of the covenant.

The complaint further alleges that by means of these acts the plaintiff had been largely deprived of the use and enjoyment of the premises and of the possession thereof, that the rental value thereof was largely diminished in his hands, and that he has been put to great costs and expenses, and particularly to great costs and expenses in defending the applications to the Municipal Court and in defending the action in the Supreme Court and has been prevented from renting the said demised premises to undertenants upon advantageous terms, and has otherwise suffered damages in the sum of $25,000. The answer is a general denial.

The defendants claim that the complaint fails to state a cause of action for a breach of this covenant for quiet enjoyment, in that it does

not allege an abandonment of the premises by the plaintiff lessee. They claim that, in order to succeed, the plaintiff must allege and prove:

"That he was physically expelled from the premises or that the set of facts which he sets forth compelled him to and he did surrender possession of the demised premises, and that he is not in possession."

It is quite true that the complaint does not contain any allegation of a physical expulsion from or abandonment of the demised premises, except that it does allege that the plaintiff was deprived of the use and enjoyment of the premises and largely deprived of the possession thereof. However, I do not interpret this allegation to mean that the plaintiff actually lost possession of any part of the premises, but only that his "beneficial enjoyment" was largely diminished by the acts of his lessor. On the other hand, the plaintiff contends that under the peculiar wording of this express covenant there can be a breach of it without physical expulsion from or abandonment of the demised premises and that therefore it is not essential to allege or prove expulsion or abandonment. In other words, he claims that he is suing not on a covenant in the usual form or on an implied covenant, but on a special express covenant, more specific and of wider scope than the usual form, and which when interpreted according to the intention of the parties must be deemed to be broken upon the commission by the landlord of acts alleged in this complaint. Chaplin says:

"The usual form of an express covenant for quiet enjoyment is that the lessee, on paying the rents reserved and performing the covenants of the lease, shall and may peaceably and quietly have, hold, and enjoy the demised premises for the designated term. If not expressed in a lease for years, it is implied." Chaplin on Landlord and Tenant, p. 221.

The covenant in the case at bar is not in the usual form of covenants for quiet enjoyment, and the learned counsel for the defense in his brief states that he has failed to discover "any covenant like it which has been construed by the courts." I have not found, nor have counsel brought to the court's attention, any case in this state where this covenant in this form has been construed by authority. There are several cases in New York which would seem at first sight to support defendants' contention and to hold that there can be no breach of any covenant for quiet enjoyment, no matter what its form, without an eviction of the tenant. See Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170; Mayor v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538; Edgerton v. Page, 20 N. Y. 281.

We believe, however, that the court in those cases did not intend to lay down a hard and fast rule of construction to be applied to all covenants for quiet enjoyment regardless of their terms, but merely announced a rule of construction for the particular form of covenant then before it in relation to the facts of those particular cases. In those cases the actions were for rent—the covenant for quiet enjoyment was implied. In two of the cases, to wit, Boreel v. Lawton and Edgerton v. Page, the tenant remained in possession, but in the other (Mayor v. Mabie) it appeared that the landlord had made an actual entry upon the premises. In all of the cases the tenant claimed a breach of the covenant for quiet enjoyment, and set up that breach.

either as a defense or as a counterclaim. The court held that there was a breach of the covenant in the case where the landlord had interfered with the tenant's possession by entry, but in the other case held there was no breach because there had been no expulsion of the tenant. It was in connection with these special facts that the court said that there could be no breach of this covenant without an eviction. The conclusion there reached by the court simply expressed its view of the intention of the parties in entering into the particular covenant then under consideration; the intention being that so long as the tenant remained in full possession he must pay all the rent, and that the covenant should not be deemed broken unless by the act of the landlord the tenant was deprived in whole or part of the demised premises. And that interpretation is reasonable when the covenant there implied is considered in its relation to the tenant's obligation to pay rent as long as he occupies the premises. And in my opinion these cases go no further than to hold that the tenant cannot get rid of his obligation to pay rent when sued upon his covenant to pay, unless he shows that by some act of the landlord he has been deprived of possession in whole or in part. Tucker v. Cooney, 34 Hun, 227, 231; Rea v. Minkler, 5 Lans. 196; Eller v. Moore, 48 App. Div. 403, 63 N. Y. Supp. 88; Shattuck v. Lamb, 65 N. Y. 499, 22 Am. Rep. 656; Scriver v. Smith, 100 N. Y. 471, 3 N. E. 675, 53 Am. Rep. 224; McAlester v. Landers, 70 Cal. 79, 11 Pac. 505. In construing the covenants in the Lawton, Page, and Mabie Cases the court doubtless had in mind the usual form of implied covenant, such as referred to by Chaplin, supra, and did not consider at all the question of whether, under an express covenant like the one at bar, the bringing of a suit in ejectment by the landlord, as was done here, would constitute a breach.

The language of the above cases must be taken to refer only to the special facts of the cases then before the court and to the particular terms of the covenant then under consideration, and not to every covenant for quiet enjoyment whatever its form. For it is certainly within the power of the parties to a lease to make a covenant for quiet enjoyment providing therein for its breach even without eviction, actual or constructive. Every covenant for quiet enjoyment becomes therefore a subject for construction by the court according to its own terms.

"All covenants are to be construed according to the intent of the parties, ascertained under familiar principles applicable to all like instruments, and in case of doubt the meaning most favorable to the lessee is preferred." Chaplin on Landlord and Tenant, p. 101.

The form of covenant in question here is quite like the forms in use in England and unlike the usual form in use in this state prior to the passage of section 253 of the Real Property Law (Consol. Laws, c. 50), relative to the construction of covenants in deeds. Platt gives the English form as follows:

"And also that it shall and may be lawful to and for the said purchaser, his heirs and assigns, immediately upon and after the execution of these presents, and from time to time, and at all times forever hereafter, to enter into and upon, have, hold, use, occupy, possess and enjoy the said messuages, etc., hereby released, or otherwise assured, or intended so to be, and every part

and parcel of the same, with the appurtenances, and to receive and take the rents, issues and profits thereof, and of every part and parcel of the same, without let, suit, trouble, eviction, ejection, expulsion, interruption, hindrance or denial whatsoever of, from or by him the said vendor, or his heirs, or any other person or persons whomsoever." Platt on Covenants, p. 138 (marginal page 312).

Referring to this form of covenant, Platt says:

"Formerly it was supposed that a court of common law could not recognize proceedings in equity, and on this ground it was resolved that a suit in chancery was not a breach of a general covenant for quiet enjoyment. But this decision has been denied, and the contrary is settled. All question on the point is now avoided by introducing into the covenant for quiet enjoyment a few words extending to suits in equity; thus, that the purchaser shall enjoy, without any let, suit, etc., by the vendor, or his heirs, etc. But the institution of a suit by a landlord against a tenant for a collateral purpose, unconnected with the lessee's estate or title, for example, to restrain him from ploughing up meadows and committing waste, is not such an interruption or disturbance as will amount to a breach of the landlord's covenant for quiet enjoyment, even though the suit prove groundless and be ultimately dismissed, with costs." Page 143 (marginal page 323).

And again, he says (page 145 [marginal page 327]):

"To qualify a party to support an action on this covenant some positive act of molestation or some deed amounting to a prohibition of enjoyment must be proved."

Further on he says:

"It is not to be understood that an ouster or expulsion must take place in order to found a suit; it is enough that the quiet enjoyment of the covenantee be invaded or prevented."

This author thus lays stress upon the use of the word "suit" in this covenant, and it is a fair inference from his language that he concludes that the mere bringing of a suit by the lessor against the lessee is of itself a breach of the covenant, provided the suit be connected with the lessee's estate or title, as in ejectment. Hunt v. Danvers, Sir T. Raym. 193; Dennett v. Atherton, Law Rep. 7 Queens' Bench, 316, 326 (1871–72); Tebb v. Cave, Law Reports 1 Chancery (1900) 642.

The covenant in the case at bar, like the English form construed by Platt, contains the words "without any manner of let, suit, trouble or hindrance of or from the said party of the first part or any other person whatsoever." Interpreting this covenant in the light of Platt's conclusions, it would appear that the bringing of the suits against the title and possession of the plaintiff in the manner alleged in the complaint are violations of the covenant, although he was never evicted.

I think it is clear from the terms of the covenant that the lessor agreed not to bring a wrongful suit against the lessee with intent to affect the lessee's possession or title—that if he did it would be deemed a breach of the covenant. For the question is: What was the intention of the parties to the covenant as shown in all the surrounding circumstances and in the words of the covenant? Was it their intention to allow the lessor by suits to slander and attack the title and possession which he had conferred upon the lessee, thus to declare to the world that he had re-entered and that the lessee was a trespasser upon the demised premises, and yet deem the covenant unbroken by the lessor simply because the suit had not been preceded by an actual

eviction or expulsion of the tenant? Such a construction would fail
to give words their ordinary meaning and language its true signifi-
cance.

In this covenant there is no mention of an eviction or re-entry or
expulsion. Nor is there anything in the covenant to suggest that the
"suit" referred to therein must be preceded by eviction, expulsion, or
actual re-entry before there could be a breach of the covenant. The
language of the covenant is plain and the intention of the parties is
clear: The lessee is to enjoy the premises without any manner of let,
suit, trouble, or hindrance of or from the landlord.

The lessor brought a suit in the Supreme Court in ejectment. We
must assume that the parties, when they entered into this covenant,
knew that the bringing of a suit in ejectment by the lessor against
the lessee was in law equivalent to an actual re-entry by the lessor—a
declaration on the part of the lessor that the relation of landlord and
tenant no longer existed and that the tenant was a trespasser. Logical-
ly it must have been the intention of the parties that such a suit
brought by the landlord maliciously and wrongfully would of itself con-
stitute a breach of the covenant. See Janes v. Paddell, 74 Misc. Rep.
409, 132 N. Y. Supp. 379; Van Rensselaer v. Ball, 19 N. Y. 100; Sam-
son v. Rose, 65 N. Y. 411; Martin v. Rector, 118 N. Y. 476, 23 N. E.
893; Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425. To hold that
the parties to this covenant intended to make breach of it depend upon
an actual expulsion would be importing into the agreement terms ab-
solutely unsuggested by its language.

In Wisconsin it has been held that the covenant for quiet enjoyment
could be broken without ouster or surrender of possession. In Akerly
v. Vilas, 23 Wis. 207, 212 (99 Am. Dec. 165), the covenant was that
the grantors of the said premises, etc., "in the quiet and peaceable pos-
session of the party of the second part, etc., would warrant and for-
ever defend against the claims of all persons lawfully claiming the
same, by, from, or under the parties of the first part or by, from, or
under any other person whomsoever." In that case Akerly had made
a deed of certain lots to the plaintiff (Vilas). Thereafter Akerly
brought suit against Vilas to set aside the deed, alleging that it had
been obtained by fraud. Akerly also procured himself to be made a
defendant in an action to partition the lands in question, and by his
answer therein denied Vilas' title. In consequence of these acts Vilas
was prevented from selling lands at the prices then ruling, or until
prices had greatly depreciated, when Akerly discontinued the action
to set aside his deed and withdrew his answer in the partition suit.
In an action by Akerly to foreclose Vilas' mortgage for the purchase
money it was held (1) that Valis was equitably entitled to have the ac-
tual damages resulting to him from said acts of Akerly deducted from
the mortgage debt, and (2) that said acts were also a breach of Aker-
ly's covenant for "quiet and peaceable possession." See headnote to the
case. Dixon, C. J., wrote as follows:

"But in this case the question is, whether a suit to avoid the deed and re-
gain possession of the lands, commenced by the *covenantor himself*, with 'no
reasonable or probable cause of action,' as alleged in the answer, and prose-
cuted 'willfully, wrongfully and maliciously,' to the great pecuniary damage

and loss of the covenantee, is a breach of the covenant. We are satisfied that it is. * * * "

So in the case at bar the question is whether a suit in ejectment with its legal consequences, commenced wrongfully by the covenantor himself and without reasonable cause and prosecuted wrongfully, maliciously and causing great pecuniary damage to the lessee is a breach of the covenant. According to the terms of the covenant reasonably interpreted I think it is a breach. It will be observed that the covenant in the case at bar is far more comprehensve in its terms than the covenant in the Akerly Case.

The case of Levitzky v. Canning, 33 Cal. 299, was an action against a lessor for breach of a covenant for quiet enjoyment, and the court there held the covenant was broken, although there was no ouster or abandonment of possession. The covenant was "to hold and enjoy the above mentioned premises peaceably and quietly for the term," etc. The complaint contained three counts. The court in considering the third count said as follows:

"From the third count in the complaint it appears that the defendant had slandered the plaintiff's possession, giving out and pretending publicly that he had no right to the possession of the demised premises, and that he had brought two actions at law to recover the possession of the premises from the plaintiff and his tenants, under the pretense that his lease had expired. That in consequence of these actions brought against himself and his tenants he had been put to great expense in defending the same, and his tenants had quit the premises, leaving the same vacant, and that he had been unable to rent the same to other parties, by reason of their doubts as to the lawfulness of his possession, caused by the acts of the defendant, in bringing said suits and publicly declaring that the possession of the plaintiff was unlawful and that he had no legal right to let the premises. Was this a breach of his covenant within the rule already stated and the cases which we have cited? That it was does not admit of doubt. Those acts, if performed by him, were as much a molestation, disturbance, and invasion of the plaintiff's possession as a taking by the shoulders and a forcible eviction of the plaintiff's tenants would have been. The character of the act must be determined by the results which follow it, and in view of the results which are alleged to have followed the acts of the defendant, there can be no question that he disturbed and interrupted the possession of the plaintiff to his injury, which is precisely what he had covenanted not to do."

In the case at bar the landlord covenanted to bring no wrongful suit affecting the tenant's estate and title. He did this very thing and so broke the covenant. In his work on Covenants for Title, at page 173, Rawle says (section 130):

"At one time there seems to have been some doubt whether a disturbance or interruption interfering with the title and possession of the land by reason of a suit in equity came within the scope of a covenant for quiet enjoyment against disturbances generally. This question is now well settled in the affirmative; but where the proceeding in equity interferes only with a particular mode of enjoyment of the land or part of it, but not with the title or possession, it is not a breach."

Section 131:

"Nothing is more generally or more truly said than that 'an eviction is necessary to a breach of the covenants for quiet enjoyment and of warranty.' The exceptions are either where the former covenant is so expressed as to have a wider scope than the latter or where some peculiar local construction is given to these covenants, or one of them."

And in his note he says:

"As, for example, where the covenant for quiet enjoyment stipulates against 'any let, suit, interruption, disturbance, etc.'"

He then refers to the following language of Gibson, C. J., in Stewart v. West, 14 Pa. 338:

"A covenant for quiet enjoyment, which resembles the modern covenant of warranty, differs from it in this, that the former is broken by the very commencement of an action on the better title."

The landlord engaged by her lease not to deny wrongfully the title of the lessee. She did so by suits wrongfully, vexatiously, and maliciously brought, in which she was defeated finally, and by which she forced the lessee into great expense to defend his title and possession. There is nothing in the terms of the covenant to justify the conclusion that it has not been violated simply because the landlord refrained from aggravating his wrong by ousting the tenant, or was unable to accomplish that purpose because of the tenant's successful opposition. She did her utmost to evict him wrongfully. Contrary to her promise she subjected him to suits, trouble, and hindrances in the enjoyment of the title and possession with which she had invested the lessee. These facts, if proved, in my opinion amount to a breach of a covenant as expressed.

The motion for judgment on the pleadings is denied, with costs.