THE ROSENTHAL PAPER COMPANY, Appellant, *v.* THE
NATIONAL FOLDING BOX ' AND PAPER COMPANY,
Respondent.

Contract — covenant — sale to defendant of right to use
patent and manufacture thereunder — covenant by owner
that he would protect patent from infringement — breach of
covenant by assignment of patent — when defendant having
received the benefits thereof cannot refuse to pay the royalties.

1. The question whether covenants are to be held dependent or
independent of each other is to be determined by the intention and
meaning of the parties, as expressed by them, and by the application of
common sense to each case submitted for adjudication. Their
expressed intention and meaning, ascertained from the whole instru-
ment, rather than from technical or conventional expressions, are
the guides in determining the character and force of their respective
covenants.

2. When the promises of the parties are concurrent and dependent,
either party defaulting in performance cannot, in the course of per-
formance, sustain an action against the other because he has also
defaulted. Neither party can maintain the action until he has per-
formed or tendered performance of his part of the agreement. A
plaintiff must aver and prove performance, or a tender or waiver of
performance, or a fact excusing non-performance.

3. The assignee of the inventor of a patent contracted with defend-
ant that the latter should sell the patented article on a royalty during
a period of five years and that he would protect the defendant from
infringements. The defendant made and sold the goods. The owner
before the expiration of the five-year term, and without the knowledge
of defendant, assigned the patent to the plaintiff, who instituted this
action to recover unpaid royalties. This assignment put it out of
the power of such assignor to perform his covenants with defendant,
who sets up that fact as a ground of defense to this action. *Held,*
that while the reciprocal provisions of the contract were concur-
rent and dependent (*Hard* v. *Seeley,* 47 Barb. 428, disapproved),
the rights of the parties may be adjudged through the principle
that substantial performance of a contract by one party, coupled
with the retention of the benefits accruing from the performance
by the other, will authorize an action by the former to recover the
contract compensation. In such case recovery may be had upon
an averment of full performance though the proof falls short of

showing it; and the remedy of the latter is by counterclaim, or by an independent action, for his damages. Defendant having kept alive the contract and secured the results, it cannot maintain that it is not subject to its obligations and liabilities for the reason that the other party had renounced it.

*Rosenthal Paper Co.* v. *Nat. Folding Box & Paper Co.*, 175 App. Div. 606, reversed.

(Argued January 30, 1919; decided May 20, 1919.)

APPEAL, by permission, from a judgment entered January 8, 1917, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed a determination of the Appellate Term, reversing a judgment of the City Court of the city of New York in favor of defendant, entered upon an order setting aside a verdict in favor of plaintiff and dismissing the complaint. The Appellate Term directed reinstatement of the verdict. The Appellate Division affirmed the City Court judgment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph A. Arnold* for appellant. The covenant to protect the patent against substantial infringements is an independent covenant. A breach would not constitute a defense to the recovery of royalties, and would not result in a discharge of the contract. It would give the defendant only the right to sue or to counterclaim for damages. (*O'Hara* v. *Harman*, 14 App. Div. 167; *Camp* v. *Treanor*, 143 N. Y. 649; *Woolsey* v. *Funke*, 121 N. Y. 87, 92; *Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Watson F. W. Co.* v. *H. W. Cornice Co.*, 181 Mo. App. 318; *Birdsall* v. *Perego*, 5 Blatch. 251; *Speare Sons Co.* v. *Casein Co.*, 122 App. Div. 22; *Pitts* v. *Jameson*, 15 Barb. 310; *Newman* v. *French*, 45 Hun, 65; *Hard* v. *Seeley*, 47 Barb. 428.) The covenant to protect the patent against substantial infringements was at most a partial considera-

tion, a failure of which would not defeat the contract. (*Post* v. *Thomas*, 212 N. Y. 264; *Smith* v. *Scott*, 6 C. B., N. S., 771; *Cutler* v. *Bower*, 17 L. J. Q. B. 217; 11 Q. B. 973; *Johnstone* v. *Milling*, 16 Q. B. 460; *Ritchie* v. *Atkinson*, 10 East, 295; *Boone* v. *Eyre*, 1 H. Bl. 273; *Campbell* v. *Jones*, 6 T. R. 570; *Hochster* v. *Dela Tom*, 6 Eng. R. C. 585.) The mere assignment of the patent did not put it out of the power of the plaintiff's assignor to perform his independent covenant to protect the patent against substantial infringements. (*Zichen* v. *Smith*, 148 N. Y. 558; *Higgins* v. *Eagleton*, 155 N. Y. 466; *B. & S. Lumber Co.* v. *Hines Lumber Co.*, 137 Fed. Rep. 300; *Ellis* v. *Miller*, 164 N. Y. 434; *Brush Electric Co.* v. *California E. L. Co.*, 52 Fed. Rep. 945; *Brush-Swann Electric Light Co.* v. *Thomson-Houston Electric Co.*, 48 Fed. Rep. 224; *Wilson* v. *Chickering*, 14 Fed. Rep. 917; *Wayman* v. *Louis Lipp Co.*, 222 Fed. Rep. 679.) The defendant cannot escape liability for minimum royalties after availing itself of the benefits of the license during the entire contract term. (*Skinner* v. *Wood, etc., Co.*, 140 N. Y. 217, 224; *Skidmore* v. *Fahys Watch Case Co.*, 28 App. Div. 101; *Jarecki* v. *Hays*, 161 Penn. St. 613; *Genese* v. *H. K. Mulford Co.*, 231 Penn. St. 80; *Strong* v. *Carver Cotton Gin Co.*, 83 N. E. Rep. 328.) The contract was assignable. (*Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *New England* v. *Gilbert*, 91 N. Y. 153; *Rochester* v. *Stiles*, 135 N. Y. 209; *Vandergrift* v. *Cowles*, 161 N. Y. 435; *British Wagon Co.* v. *Lea & Co.* [1880], 5 Q. B. D. 149; *Matter of Wright*, 157 Fed. Rep. 544; *Gray E. S. Co.* v. *Gray & Davis*, 224 Fed. Rep. 723; *Fortimato* v. *Patten*, 147 N. Y. 277; *Snyder* v. *City of New York*, 74 App. Div. 421; *Muck* v. *Stoner*, 19 N. Y. 26.)

*Franklin M. Clark* and *Walter D. Edmonds* for respondent. Respondent's obligation to pay the " minimum " royalty was discharged by Seligstein's assignment of

the patent, and of all claims for infringement thereof because thereby Seligstein put it out of his power to perform his covenants. (*Paper Bag Case,* 210 U. S. 405; *United States* v. *Bell Co.,* 167 U. S. 224; *Bauer* v. *O'Donnell,* 229 U. S. 10; *Adams* v. *Burke,* 17 Wall. 453; *Gaylor* v. *Wilder,* 10 How. U. S. 477; *Waterman* v. *Mackenzie,* 138 U. S. 252; *Hobbie* v. *Jennison,* 149 U. S. 355; 3 Page on Cont. 2247; *Gail* v. *Gail,* 112 N. Y. Supp. 96; *Burdell* v. *Denig,* 92 U. S. 716; *Tilghman* v. *Proctor,* 125 U. S. 143.) Seligstein's " mere assignment " of the patent put it out of his power to " faithfully protect " it. (*Zichen* v. *Smith,* 148 N. Y. 558.) The agreement was personal, as regards Seligstein, and, therefore, unassignable by him. (*Gray E. S. Co.* v. *Gray & Davis,* 224 Fed. Rep. 723; *Central Brass Co.* v. *Stuber,* 220 Fed. Rep. 909; *Lovell* v. *St. Louis, etc., Co.,* 111 U. S. 264; *Boulton* v. *Jones,* 2 H. & N. 564; *Boston* v. *Potter,* 123 Mass. 28; *Edison* v. *Babka,* 69 N. W. Rep. 499; *Consumers* v. *Webster,* 32 App. Div. 592; *Barcus* v. *Dorries,* 64 App. Div. 109; *Kling* v. *Irving,* 160 N. Y. 698.)

Collin, J. The action was for the recovery of royalties for the use of a patent. Originally brought in the City Court of New York city, the jury rendered a verdict for the plaintiff in the sum of $1,840.73. The judgment of the City Court set the verdict aside, upon the ground that it was contrary to law, and dismissed the complaint. The Appellate Term, upon the appeal of the plaintiff, reversed that judgment, reinstated the verdict and upon it rendered judgment for the plaintiff. The Appellate Division, upon the appeal of the defendant, reversed the determination of the Appellate Term and affirmed the judgment of the City Court. The Appellate Division permitted the appeal to this court.

The action is based upon a contract in writing of March, 1909, between Isse Seligstein and the defendant.

January 22, 1912, Seligstein assigned to the plaintiff here the patent involved (and others) which Seligstein held, not as the inventor, but as the assignee of the inventor, and all of his "right, title and interest in, to and under" the contract of March, 1909. Plaintiff instituted this action in virtue of the assignment. The contents of the contract of March, 1909, may be adequately stated as follows: The ownership of Seligstein of letters patent for the millinery or suit box and the desire of the defendant to acquire the exclusive right to manufacture and sell the box within a designated territory are recited. Seligstein sells to the company the exclusive right to manufacture and sell the boxes under said patent within the territory, "upon the following terms and conditions:" (1) The company "agrees to pay Seligstein a royalty of One Dollar ($1.00) per thousand boxes up to an average daily sale of Twenty (20) thousand boxes per day, per year of 300 days, and on all boxes sold in excess of said twenty (20) thousand boxes per day, per year of 300 days, the said The National Folding Box & Paper Company agrees to pay a royalty of seventy-five cents (75c.) per thousand boxes, but it is expressly understood that the payment by the said The National Folding Box & Paper Company to said Seligstein for the right to manufacture and sell boxes under said Letters Patent shall not be less than the sum of Five hundred Dollars ($500.00) for each and every year during the life of this contract.

"2. The said Seligstein promises and agrees that he will faithfully protect said Letters Patent from any and all substantial infringements of said Letters Patent.

"3. The said Seligstein further agrees that during the life of this contract he will not sell within the territory, above described, any box manufactured under said Letters Patent #906,138, nor any other clothing, millinery or suit box, and further that he will not during the life of this contract sell any rights for any clothing,

millinery or suit box to anyone for the territory hereinbefore described.

" 4. The term of this contract shall be five (5) years from and after the first day of March, A. D. 1909, * * *."

The defendant through the period of five years made and sold the boxes and regularly paid, quarter-annually, to Seligstein the royalty of one dollar per thousand boxes on all the boxes sold. Those paid royalties aggregated $917.79. The minimum aggregate royalty to be paid for the five years was $2,500.00, that is, not less than $500.00 each year. This action is to recover the sum of the difference between those aggregates, with interest. The City Court set aside the verdict in favor of the plaintiff and dismissed the complaint upon the grounds: (a) Seligstein, by assigning the patent, put it out of his power to perform his agreement to protect the patent from any and all substantial infringements of the letters patent, and, in consequence thereof, the defendant was released from its agreement to pay the royalty; and (b) the defendant did not, by paying royalty throughout the period, waive its right to assert such release, because it did not know of the assignment of the patent until the five years and the contract had expired. The Appellate Term reversed the order and judgment of the City Court and reinstated and ordered judgment upon the verdict, upon the ground that the defendant had the full benefit of the contract for its entire period without molestation of any kind. The Appellate Division reversed the determination of the Appellate Term and affirmed the order of the City Court, upon the grounds: (a) The agreement of the defendant to pay the minimum royalty and the agreement of Seligstein to protect the patent were concurrent and dependent; when Seligstein assigned the patent he put it out of his power to protect the patent (because the owner of the patent alone had a standing to sue on account of an infringement), and

therein and thereby committed a breach of the contract which relieved the defendant from the obligation of full performance on its part; (b) defendant did not waive this breach, because, in the first place, it was ignorant of it and, in the second place, plaintiff's complaint alleges full performance by Seligstein of this agreement, and (c) the contract was personal to Seligstein and unassignable.

We take up first the question whether or not the agreement of the defendant to pay the minimum royalty and the agreements of Seligstein to protect the letters patent from substantial infringement, and to refrain from selling, within the designated territory, any box manufactured under the patent, or any rights for any clothing, millinery or suit box to any one for the territory were dependent or independent of each other. In *Kingston* v. *Preston,* cited at the bar in *Jones* v. *Barkley* (2 Douglas, 684), Lord Mansfield expressed himself to the following effect: " There are three kinds of covenants: 1. Such as are called mutual and independent, where either party may recover damages from the other, for the injury he may have received by a breach of the covenants in his favour, and where it is no excuse for the defendant, to allege a breach of the covenants on the part of the plaintiff. 2. There are covenants which are conditions and dependent, in which the performance of one depends on the prior performance of another, and, therefore, till this prior condition is performed, the other party is not liable to an action on his covenant. 3. There is also a third sort of covenants, which are mutual conditions to be performed at the same time; and, in these, if one party was ready, and offered, to perform his part, and the other neglected, or refused, to perform his, he who was ready, and offered, has fulfilled his engagement, and may maintain an action for the default of the other; though it is not certain that either is obliged to do the first act." The complexities of modern industrial and commercial

transactions have not rendered the classification inaccurate or inadequate. By a long series of decisions, the rule has been established that the question whether covenants are to be held dependent or independent of each other is to be determined by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication. (*Stavers* v. *Curling*, 3 Bingham's N. C. 355; *Tipton* v. *Feitner*, 20 N. Y. 423; *Pollak* v. *Brush Electric Association*, 128 U. S. 446; *Loud* v. *Pomona Land & Water Co.*, 153 U. S. 564; *Griggs* v. *Moors*, 168 Mass. 354; *Leonard* v. *Dyer*, 26 Conn. 172.) The efforts put forth in judicial opinions and by text writers to define or formulate the distinctions of dependence and independence of promises or covenants have revealed their comparative futility and served, in the main, to strengthen the rule. Parties have the right to contract as they will for any lawful purpose and the problem for the courts is to ascertain, in accordance with established rules of interpretation, the real contract or agreement. If they make their promises dependent or independent throughout, · or dependent in part and independent in part, it is not for the courts to thwart them. Their expressed intention and meaning, ascertained from the whole instrument, rather than from technical or conventional expressions, are the guides in determining the character and force of their respective covenants. In the contract under consideration the intention of the parties is not obscure. They contemplated that the letters patent prohibited to all persons except Seligstein, in the absence of his authorization, the manufacture and sale or the manufacture or sale of any box incorporating the patented invention or inventions and that the contract secured to the defendant the exclusive right, as against the whole world, to manufacture and sell, within the prescribed territory, the box. This exclusive right the defendant sought and Seligstein sold to it. The continued exclusiveness of the right through-

out the whole period of five years was the root of the transaction. The defendant, presumably, could not, in the intention of the parties, pay Seligstein for the right to manufacture and sell a product which others, without price, were manufacturing and selling. It was essential to the purpose of the contract that the protection to and the exclusiveness of the right sold the defendant should be coexistent or concurrent with its ownership of it, and they were so created. The promises of Seligstein were to be kept and performed concurrently with those of the defendant. They were to be performed at all times during the licensed period. The promises of the defendant were dependent or conditional upon those of Seligstein. It is not reasonable to presume that the defendant intended to pay for the exclusive right through the five years without having it throughout the period. They intended that if it did not have the right it should not pay for it. Performance by the defendant was conditioned upon and subject to performance by Seligstein. The reciprocal promises were, therefore, concurrent and dependent. The case of *Wilfley* v. *New Standard Concentrator Co.* (164 Fed. Rep. 421, Circuit Court of Appeals) has a close resemblance to that at bar. The agreements of the owners of the patent in the *Wilfley* case were broader than those of Seligstein here. They were to protect the claims of the patent (and not merely to protect it from substantial infringement), and the rights of the licensees to its use, and to prosecute infringers of it. The principles upon which the decision was grounded are, if sound, applicable, in part, here. A case of contrary import is *Hard* v. *Seeley* (47 Barb. 428), in which, as it seems to us, there is fallacious reasoning. The promises there were held independent for the reason that the vendee of the perpetual exclusive right to make, sell and use a proprietary medicine was to pay the vendor a sum annually, and, therefore, the vendor's rights to the

money could not depend upon his fulfilling his covenant not to ever communicate the art of compounding the medicine itself. The reasoning was applied through the principle that performance on the part of the vendee was, by agreement, to precede performance by the vendor. It overlooked, however, the fact, which barred the principle, as we think, that the reciprocal performances were to be coexistent and to proceed in equal pace. Continuous performance by the vendor conditioned his right to the continuous payments of the vendee. In their nature and effect the covenants were to be performed at the same time and are not within the rule that where the acts stipulated to be done are to be done at different times, the covenants are generally construed to be independent. (See *Delaware Trust Co.* v. *Calm,* 195 N. Y. 231.)

The general rule exists that a covenant which goes to only a part and not to the whole consideration of the contract is not a dependent and is an independent covenant. (*Graves* v. *Legg,* 9 Exch. R. 709.) It expresses one of the weighty considerations by which to determine whether covenants were intended as dependent or independent. It is inferior and submissive, however, to the rule that the expressed intention of the parties is controlling.

When the promises of the parties are concurrent and dependent, either party defaulting in performance cannot, in the course of performance, sustain an action against the other because he has also defaulted. Neither party can maintain the action until he has performed or tendered performance of his part of the agreement. A plaintiff must aver and prove performance, or a tender or waiver of performance, or a fact excusing non-performance. (*Dunham* v. *Pettee,* 8 N. Y. 508; *Morris* v. *Sliter,* 1 Denio, 59; *Oakley* v. *Morton,* 11 N. Y. 25.) The instant case is, however, presented to us in such a condition and form that those rules are not invocable to the defendant, as a

further statement of the facts will disclose.  The five years period of the license contract expired on the last day of February, 1914.  Throughout it, the defendant continued to manufacture and sell the boxes under the license and pay the prescribed royalty of one dollar per thousand boxes.  The defendant had not notice or knowledge of the assignment of January 22, 1912, of Seligstein to the plaintiff, until after the expiration of the license and the last payment of royalty, or until after March 1, 1914.  This action was commenced February 4, 1915.  Upon the trial the assignment of Seligstein to the plaintiff was received in evidence and the making of it and its legal effect were the grounds of the decision of the City Court.  There was not, for the purpose of, or within, our consideration, an actual infringement of the patent, or molestation or interference by infringers or infringements, or by Seligstein or his assignee, of the patent, or of the defendant's exclusive licensed right.  The defendant had and enjoyed the whole interest or right Seligstein sold to him.  We are to determine, under those facts, whether or not the sale and assignment by Seligstein to the plaintiff, on January twenty-second, 1912, of his entire right, title and interest in, to and under the letters patent and the contract between Seligstein and the defendant in and of itself is a bar to this action.  The sale and assignment by Seligstein put it out of his power to perform his covenants.  In virtue of them he became a stranger to the patent and the contract.  He conveyed to the plaintiff the entire and unqualified monopoly which he held.  As to infringers and infringements of the patent he became a person without interest and remediless.  (*Pope Manufacturing Co.* v. *Gormully & J. Manufacturing Co.*, 144 U. S. 248; *Littlefield* v. *Perry*, 21 Wall. 205.)  The defendant, nevertheless, cannot have the aid of the doctrine that where a party to an executory contract puts it out of his power to perform, as did Seligstein, the other party may regard

the contract as terminated and demand whatever damages he has sustained. (*Lovell* v. *St. Louis Mutual Life Ins. Co.*, 111 U. S. 264, 274.) The license contract ceased, by its terms and execution, to be executory on the last day of February, 1914. While the inexcusable breach of the contract by Seligstein conferred upon the defendant the right to terminate it while executory, the defendant did not exercise the right. It used the license to the contracted termination. The object of the agreement became fully performed. Manifestly, the defendant could not, after the purpose and object of the contract were accomplished regard it as executory; it could not rescind it; it could not deem itself deprived of the results accruing through the continuance of the contract and performance upon its part; it could only claim such damages, if any, as had been caused by the breach. Where a party to an executory contract, containing mutual obligations, disables himself from performing it during its performance the other party has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach, or to wait until there was to be final performance. (*Ga Nun* v. *Palmer*, 202 N. Y. 483; *Central Trust Co. of Ill.* v. *Chicago Auditorium Assn.*, 240 U. S. 581, 589.) The opinions in those cases state that the rule has its exceptions. The other party may, however, decline to deem the contract terminated and may insist that it shall continue in force up to the time fixed for its final performance. A contract thus kept alive exists for the benefit of both parties. The party who refuses to regard it as terminated by the breach remains liable to all his obligations and liabilities under it. (*Frost* v. *Knight*, L. R. 7 Exch. 111; *Howard* v. *Daly*, 61 N. Y. 362; *Bernstein* v. *Meech*, 130 N. Y. 354; *Johnstone* v. *Milling*, L. R. 16 Q. B. D. 460; *Lake Shore & Michigan Southern Railway Co.* v. *Richards*, 152 Ill. 59, 80; *Roehm* v. *Horst*, 178 U. S. 1.) This doctrine also has its exceptions, none of which is

relevant here. The action of Seligstein left the defendant free to continue as it did in the performance of the contract. The absence of notice to or knowledge of the defendant that Seligstein had assigned the contract does not affect the rights of the parties as presented to us. Seligstein did not violate a legal obligation or duty in keeping it unknown to the defendant.

By the terms of the contract the right of the defendant to manufacture and sell the boxes and its obligation to pay the rated or minimum royalty were conditioned upon the agreements of Seligstein and his performance of them. Seligstein's action gave it the option to cease performance and recover damages. It did not give it the option to manufacture and sell and not pay the royalties. It manufactured and sold, and thus nullified the conditional quality of Seligstein's promises. Having kept alive the contract and secured the results, it cannot maintain that it is not subject to its obligations and liabilities, for the reason that Seligstein had renounced it. Its remedy is the recovery, in counterclaim or action, of the damages, if any, Seligstein's action or non-performance caused it.

The assignment transferred to the plaintiff the cause of action and constituted it the real party in interest. Seligstein assigned to the plaintiff all of his " right, title and interest in, to and under " the contract. The contract did not, in terms, forbid the assignment. The fact that the promises of the defendant ran to Seligstein and not to him and his assigns is indecisive of the assignability of the contract. The general rule now prevailing (as the successor of the archaic view that a contract created strictly personal obligations between the parties and non-assignability was a logical attribute), that any property right, not necessarily personal, is assignable, is overcome only by agreement of the contracting parties or a principle of law or public policy. (*New York Bank Note Co.* v. *Hamilton Bank Note E. & P. Co.*, 180 N. Y.

280; *Smith* v. *Craig,* 211 N. Y. 456; *Quinn* v. *Whitney,* 204 N. Y. 363.) In this jurisdiction the statute, in effect, so provides. (Code of Civil Procedure, sections 1909, 1910.) Seligstein's disqualification from a performance of the contract, consequent upon the assignment by him of the letters patent, casts serious doubt upon the legality, as to the defendant, of the assignment of the letters patent. (*Devlin* v. *Mayor, etc., of New York,* 63 N. Y. 8; *Tolhurst* v. *Associated Portland Cement Manufacturers, Limited,* [1902] 2 K. B. 660; *New England Iron Co.* v. *Gilbert Elevated R. R. Co.,* 91 N. Y. 153.)

There is not, however, cause for impeaching the assignment by Seligstein of his right and interest under the contract in the fact that it and the letters patent were assigned to the plaintiff by the same instrument. (*American Lithographic Co.* v. *Ziegler,* 216 Mass. 287.) The action of the plaintiff is based upon the contract and the assignment relating to it alone. The contract was not purely personal. Its subject did not involve the personal relation, integrity or skill of Seligstein. In case he, owning the patent, had died during the performance, his executor or administrator could have performed. The assignment did not absolve him from its obligations. Resort could still be made to him for the stipulated protection or damages for a breach. There is not a reason for holding the assignment unlawful or inoperative. (*Devlin* v. *Mayor, etc., of New York,* 63 N. Y. 8; *Citizens Loan Assoc.* v. *Boston & Maine R. R.,* 196 Mass. 528; *Knevals* v. *Blauvelt,* 82 Me. 458; *Hawley* v. *Bristol,* 39 Conn. 26.)

The judgment of the Appellate Division should be reversed and the judgment of the Appellate Term affirmed, with costs in this court and Appellate Division.

HISCOCK, Ch. J., CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.