PETER B. BULLINGER, Respondent, *v.* INTERBORO BREWING COMPANY, INC., Appellant.

Second Department, December 10, 1920.

Contracts — dependent mutual promises — agreement by plaintiff to purchase all beer, etc., used by him for stated period and by defendant to sell beer, etc., and to convey real estate — action to recover damages for defendant's failure to supply beer, etc.— purchases by plaintiff from third person as defense to action — application of doctrine of substantial performance.

The promises of the plaintiff to purchase exclusively from the defendant for ten years all lager beer, sparkling ales and bottled beer to be used on the premises transferred by the defendant to the plaintiff, and the promise of the defendant to sell said beer and ale, which promises formed a part of the consideration for the transfer, were dependent.

Accordingly the purchase by the plaintiff of some beer from a third person was a complete defense to an action by him based on the failure of the defendant to deliver beer, etc., pursuant to the contract.

The doctrine of substantial performance did not apply, for by the plaintiff's own testimony it appeared that he had willfully and intentionally breached the contract by making outside purchases without the defendant's consent or waiver.

APPEAL by the defendant, Interboro Brewing Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 30th day of March, 1920, upon the verdict of a jury, and also from an order entered in the said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

On June 14, 1915, plaintiff, Bullinger, and defendant brewing company made a written agreement that recites a prior oral agreement whereby the defendant undertook to sell and the plaintiff to buy certain real estate in consideration of plaintiff's entering into such written agreement. The agreement then provides that, for good and valuable consideration, and in further consideration of defendant's selling plaintiff the real estate in question, defendant agrees to " sell and deliver to the said Bullinger, his successors or assigns, all the lager beer, sparkling ales and bottled beer which the said Bullinger, his successors or assigns, may use, sell or give away in the premises hereinafter mentioned, during the term of ten (10) years from the date of this agreement," at a fixed price. And Bullinger agrees to buy at that price from the defendant " all the lager beer, sparkling ales, and bottled beer to be used, sold or given away in the premises occupied by the said Bullinger as a saloon, or to be occupied by his successors or assigns, and to the exclusion of any other beer, sparkling ales or bottled beer, manufactured or sold by any other person or persons, firm or firms, corporation or corporations." It provides that if the plaintiff shall not purchase from the defendant exclusively and in the further event that default in payments for the potables shall continue for thirty days after written notice be given by the defendant to the plaintiff, or in the event that the sale of lager beer, sparkling ales and bottled beer at the premises is discontinued, the defendant is given the option to repurchase the premises for the original price of $15,000. The agreement is made an instrument affecting the land, which land is particularly described therein.

Under this agreement, and until February, 1918, plaintiff bought beer from defendant and paid for it. In December, 1917, the proclamation of the President restricting brewers to a brew containing two and seventy-five one-hundredths per cent of alcohol and to the use of seventy per-cent of the raw material theretofore employed became effective. (See 40 U. S. Stat. at Large, 1728, 1729.) Defendant in that month entered into certain negotiations with the Ebling Brewing Company, which resulted in defendant's discontinuing its brewery in February, 1918. The defendant delivered beer to the plaintiff until February 12, 1918. From February 15, 1918, until July 1, 1919, plaintiff purchased beer from the Ebling Brewing Company. The purchase aggregated 575¾ barrels for $8,986.03, an excess of $2,609.53 over what plaintiff would have paid defendant at the said contract price. On July 1, 1919, plaintiff's business, by force of Federal legislation, became illegal. (See War Prohibition Act [40 U. S. Stat. at Large, 1045, chap. 212; Id. 1046], § 1; U. S. Const. 18th Amendt.; 40 U. S. Stat. at Large, 1941, 1942; National Prohibition Act, being 41 U. S. Stat. at Large, 305, chap. 83.)

*Eugene Cohn* [*Henry A. Rubino* with him on the brief], for the appellant.

*Emil Weitzner* [*David Steckler* with him on the brief], for the respondent.

JENKS, P. J.:

The plaintiff complains that as defendant ceased to manu-. facture beer on or about February 15, 1918, the plaintiff was compelled to buy beer from the Ebling Brewing Company at prices in excess of the fixed price in the agreement, and has recovered a verdict for such excess. In addition to denials, the answer sets up several defenses, of which one is: " Upon information and belief, defendant alleges that the plaintiff, in violation of the provisions of this agreement, did sell, use and give away in the said premises beer, sparkling ales and bottled beer not manufactured by the defendant but manufactured by others." The plaintiff testified that for some months in 1917, and, therefore, during the life of the said agreement, he bought beer from Trommer, an outsider.

I think that the promises for sale and purchase of the beer, tested by the criteria of intention and common sense (*Rosenthal P. Co.* v. *Nat. Folding B. & P. Co.*, 226 N. Y. 320; *Tipton* v. *Feitner*, 20 id. 423), were dependent. It seems reasonable that the defendant in parting with ownership of the premises which had been and were to be used for retail of defendant's manufactures, would seek to control still such use to its benefit. The agreement is in furtherance of such policy. For in exchange, so to speak, of the control incidental to ownership of the premises, the defendant required of the new owner exclusive purchases from it for 10 years at the fixed price. Exclusion secured monopoly, and this was the valuable feature of the covenant. That feature is like unto the contract considered in *Fox* v. *Satterlee* (8 N. Y. Supp. 879). (See, too, *Rosenthal's Case, supra,* 321.) I think that the exclusive purchase of the defendant's beer during that period was a condition precedent and that a breach thereof by the plaintiff prevents his recovery in this action. (*Cunningham* v. *Jones,* 20 N. Y. 486; *Bonesteel* v. *Mayor, etc.,* 22 id. 162; *Brown* v. *Weber,* 38 id. 187; *Cornell* v. *Cornell,* 96 id. 108; *Bell* v. *Harrison,* 3 Wkly. Dig. 106; *Lake* v. *McElfatrick,* 139 N. Y. 349, 357; *Loud* v. *Pomona L. & W. Co.,* 153 U. S. 564; *Roberts* v. *Brett,* 11 H. L. 350; *Bank of China, etc.,* v. *American Trading Co.,* A. C. 1894, 266; *Weaver* v. *Sessions,* 6 Taunt. 154; 2 Pars. Cont. 644, 790, 791.) The covenants were not mutual in the sense that there was " no default by the appellant until that instant of time at which there was a like default by the respondent * * * but the fulfilment of his own engagement by each of the parties, is a necessary preliminary to his right to recover on the agreement." (*Roberts* v. *Brett, supra.*) Such was the law of the case so far as charged by the learned court without exception or contrary or contradictory request. The court said with reference to the plaintiff: " Of course he had to live up to his part of the contract, if he seeks to hold them to their part of the contract."

But the learned court instructed the jury that the doctrine of substantial performance was available to the plaintiff. And after pointing out that in that period the said purchases from Trommer amounted to $200 and the purchases from the defendant amounted to $2,200, the court left it to the jury

to say whether there had been a substantial performance by the plaintiff. This disposition was met by sufficient objections and exceptions and requests for instruction by the defendant. I think that the learned court fell into reversible error. There was before the jury the plaintiff's own testimony that he had made these outside purchases from Trommer. The plaintiff testifies that he bought the beer from Trommer because there was a call for it from some of his customers. Thus the court said to the jury: " The plaintiff says he carried the Trommer's, or had to carry it, because there was some little demand for that beer; somebody, I suppose, or some people wanted it. But he paid $2,200 to the Interboro Company during this period that he paid $200 to Trommer's." There was no evidence that the plaintiff had done this thing by consent or with countenance or waiver on the part of the defendant. As is said by COMSTOCK, J., for the court in *Smith* v. *Brady* (17 N. Y. 173, 180): " For aught that appears, the omissions and defects were intentional and willful, and, in the absence of all explanation, the presumption is that they were so."

True, the learned court did instruct the jury that the plaintiff must live up to the contract substantially and " in good faith," but none the less it permitted the jury to find performance of the contract although the plaintiff had broken it, upon consideration of the extent of that breach, although the evidence is plain that the breach was intentional and willful. But the " good faith " required is in an intention to perform the contract literally and exactly, and any shortcoming must not be intentional or deliberate or willful. As LORING, J., for the court in *Sipley* v. *Stickney* (190 Mass. 47) pertinently says: " Where a contractor commits a willful default and yet claims the contract price, he in effect claims that he has a right to break his contract. But he has no such right."

The doctrine of substantial performance contemplates performance of the contract as it is made, and is in amelioration of literal and exact performance lest one who has fallen short honestly of letter and exactness shall lose all compensation for work or materials. The doctrine has no application if there was an intentional, deliberate and willful departure from

the contract. In *Desmond-Dunne Co.* v. *Friedman-Doscher Co.* (162 N. Y. 490) the court say: " The rule is that a substantial performance must be established in order to entitle the party claiming the benefit to recover, but this does not mean a literal compliance as to all details. Undoubtedly, a willful or intentional departure would defeat recovery. (*Miller* v. *Benjamin,* 142 N. Y. 613; *Glacius* v. *Black,* 50 N. Y. 145; *Phillip* v. *Gallant,* 62 N. Y. 257, 264; *Woodward* v. *Fuller,* 80 N. Y. 315; *Heckmann* v. *Pinkney,* 81 N. Y. 211; *Dauchey* v. *Drake,* 85 N. Y. 411; *Van Clief* v. *Van Vechten,* 130 N. Y. 579; *Crouch* v. *Gutmann,* 134 N. Y. 51.)" This court, per HIRSCHBERG, J., in *Gompert* v. *Healy* (149 App. Div. 199) tersely stated that the deviations must be " minor, unimportant, inadvertent and unintentional." (See, too, *Phillip* v. *Gallant,* 62 N. Y. 256; *Nolan* v. *Whitney,* 88 id. 649; *Van Clief* v. *Van Vechten,* 130 id. 571, 579; *Miller* v. *Benjamin,* 142 id. 613, 617; *Spence* v. *Ham,* 163 id. 220, 225; *Mitchell* v. *Dunmore Realty Co.,* 126 App. Div. 829; *Sipley* v. *Stickney, supra;* Page Cont. 2145 *et seq.;* Anson Cont. [Corbin's Am. ed.] §§ 367, 368, 369.) The " good faith " required is not to be measured by the extent of an intentional and willful violation of the contract. The court in *Van Clief* v. *Van Vechten* (*supra,* 579) say: " While slight and insignificant imperfections or deviations may be overlooked on the principle of *de minimis non curat lex,* the contract in other respects must be performed according to its terms. When the refusal to proceed is willful the difference between substantial and literal performance is bounded by the line of *de minimis.* (*Smith* v. *Brady,* 17 N. Y. 173; *Cunningham* v. *Jones,* 20 id. 486; *Bonesteel* v. *Mayor, etc.,* 22 id. 162; *Walker* v. *Millard,* 29 id. 375; *Glacius* v. *Black,* 50 id. 145; *Catlin* v. *Tobias,* 26 id. 217; *Husted* v. *Craig,* 36 id. 221; *Flaherty* v. *Miner,* 123 id. 382; Hare on Contracts, 569; Leake on Contracts, 821.) "

It may be that the plaintiff can establish waiver, estoppel or some fact of legal excuse for his breach of the condition precedent, but until then I think that he cannot recover on the doctrine of substantial performance. It does not seem necessary now to discuss the question whether the transfer to the Ebling Brewing Company was in itself a breach of the contract by the defendant within the doctrine of *Ellis* v.

*Miller* (164 N. Y. 439) and like cases, or to consider the termination of the contract by the law of the land.

The judgment and order must be reversed and a new trial be granted, with costs to abide the event.

RICH, PUTNAM, BLACKMAR and KELLY, JJ., concur.

Judgment and order reversed and new trial granted, with costs to abide the event.