EDWIN H. UPDIKE and Others, as Trustees in Bankruptcy of H. L. STRATTON, INC., Plaintiffs, *v.* OAKLAND MOTOR CAR COMPANY, Defendant.

City Court of New York, New York County, June 7, 1929.

*Jonas & Neuburger,* for the plaintiffs.

*John Thomas Smith,* for the defendant.

Schimmel, J. The complaint alleges that the plaintiffs were duly appointed trustees of the bankrupt estate of H. L. Stratton, Inc. (formerly, Stratton, Bliss Co., Inc.), hereinafter referred to as Stratton. An agreement was entered into between Stratton and the defendant Oakland Motor Car Company, hereinafter referred to as Oakland, by the terms of which Oakland agreed to sell and Stratton agreed to buy and pay for certain automobiles, parts and accessories and to conduct exclusively the business of a dealer in Oakland automobiles and parts. Oakland further agreed to pay to Stratton the sum of $25,000 per year towards the rent of the premises occupied by the latter, the payment of which was to be made in equal monthly installments of $2,083.33 for a period of four years beginning with December 1, 1924. It did not pay the monthly installment of rent due on January 1, 1927, although duly demanded. The answer admitted all the allegations of the complaint except that the sum of $2,083.33 was due, and as a defense set forth that Stratton was petitioned into bankruptcy on the 30th day of December, 1926, and because of such bankruptcy Stratton had foreclosed itself from performing the obligations of the agreement on its part to be performed and that on and after December 30, 1926, Stratton did not duly perform; that on or about the 30th day of December, 1926, defendant duly notified the plaintiffs in writing of the cancellation of the agreement as provided in the contract between Stratton and Oakland. A jury was waived and the cause was tried before the court. The proof consisted of the admissions in the pleadings, the contract and the defendant's letter to the receivers of Stratton dated December 31, 1926, terminating the contract. At the conclusion of plaintiffs' case, the defendant moved to dismiss the complaint on the ground that plaintiffs neither alleged nor proved performance of conditions precedent. Plaintiffs, however, urge that neither such allegation nor the proof was required as the undertaking of Oakland was an independent one and enforcible as such. It is conceded that the defendant gave notice of the termination of the contract dated December 31, 1926, to the receivers of Stratton, the termination " effective ten days from the date of this letter," and it is likewise conceded that the contract was alive on January 1, 1927, and its termination did not become operative until January 10, 1927. The contract not having been terminated until after January 10, 1927, the question is whether in an action by Stratton's trustees to recover for the rental contribution for the month of January it was necessary to allege and prove due performance of

the terms of the contract on the part of Stratton or its trustees. The determination of this question of course depends upon whether the agreement to contribute the $25,000 to the rent constituted an independent covenant on the part of the defendant or one of the dependent covenants in the agreement. Whether covenants are dependent or independent is a question of intention and meaning of the parties as expressed by them and as deduced from the terms of the contract. (*Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313.) The solution, therefore, of the intention of the parties makes necessary an analysis of the contract. Stratton agreed not to have any active participation in any other automobile company, to sell Oakland's automobile exclusively, to maintain places of business and salesroom and service stations satisfactory to the defendant, to comply with all of the defendant's requirements respecting advertising, sale and servicing of defendant's automobiles. The defendant undertook to give to Stratton the exclusive privilege of selling its automobiles within a designated territory, compensating Stratton by a discount from the list price of its automobiles. The significant parts of the agreement provided for: (1) The machinery for terminating the contract either for or without cause; (2) the payment of $25,000 per year toward the rent, payable in monthly installments beginning with December 1, 1924 (Par. IV); (3) the payment of a bulk sum toward the rent in the event that the contract was terminated by the defendant before August 1, 1927 (Par. IV).

The controversy in the instant case centers around the provisions contained in the following paragraph of the modified agreement, to wit: "*Fourth.* The SELLER agrees to pay to the DIRECT DEALER toward the rent of the DIRECT DEALER'S QUARTERS now located at the northeast corner of Broadway and Fifty-Seventh Street, New York City, or any other quarters that may be mutually satisfactory to the parties hereto, the sum of Twenty-five thousand dollars ($25,000) per year in equal monthly instalments of two thousand eighty three and 33/100 ($2,083.33) dollars for a period of four (4) years, beginning with December 1, 1924. If this agreement is terminated for cause by the SELLER before August 1, 1927, or on any renewal period, the said payments shall cease upon the said termination, but if this agreement is terminated by the SELLER without cause before August 1, 1927, or in any renewal period, or the SELLER gives to the DIRECT DEALER the notice (provided for in Article Twenty-second hereof), that it will not renew this agreement beyond August 1, 1927, then upon the said termination or on August 1, 1927, as the case may be, SELLER agrees to, nevertheless, pay to the DIRECT DEALER a sum equal to the difference between

the aggregate amount then already paid by SELLER to DIRECT DEALER under this clause Fourth and the sum of One hundred thousand dollars ($100,000)." The agreement thus to contribute to the rent was not coupled with any " if " clause or any words of condition. There is nothing in it to indicate a promise to buy a definite number of cars a month, or to pay for them, or to sell a definite number, or to do any other thing, as a condition precedent to defendant's obligation to pay $2,083.33 as a contribution to the rent. The rent payable every month was a definite unvarying obligation. Reading the contract as a whole and viewing it in the light of the intention of the parties, the court is forced to the conclusion that the intention was that Stratton should receive its contribution to the rent every month, regardless of sales fluctuation. The defendant did not agree to make a contribution toward the rent on condition that Stratton do certain things. Stratton already was bound to sell cars of the defendant exclusively and the defendant was bound to give to Stratton a discount on the cars bought; those terms were mutually dependent and were reciprocal conditions. With reference, however, to the contribution toward rent, the undertaking on the part of the defendant was an independent one and not conditioned upon the doing of anything by Stratton. The court must conclude that the intention of the parties as gathered from the contract was that the defendant was to help pay the rent at the beginning of the month, irrespective of performance or nonperformance by Stratton so long as the contract was in effect. The contract was made on November 3, 1924. It was not to go into effect until December 1, 1924, when the obligation of both parties accrued. Suppose, between November third and December first, the defendant, without cause, decided to rescind the contract; it could do so under paragraph 4 upon payment of a stipulated sum. Obviously, also, under this part of paragraph 4, the defendant could each month after December 1, 1924, declare the contract terminated for or without cause; upon termination without cause the obligation of the defendant would accrue to pay Stratton the difference between the aggregate contributions already made and $100,000; that obligation was absolute and the defendant could not escape its consequences. If the defendant refused to pay such difference Stratton could unquestionably bring its action on the agreement and recover judgment without alleging and proving due performance; for there was nothing for Stratton to perform. And if Oakland had not made its contribution to the rent on December 1, 1924, Stratton would have had a cause of action on December 2, 1924, and it certainly would not then have had to allege due performance or prove it. In other words, Stratton had nothing to

perform before defendant's obligation to contribute to rent had accrued. The promise to pay $2,083.33 a month toward the rent was, therefore, intended as an independent covenant — it was an inducement for entering into the contract and not a condition for its performance. The very fact that defendant undertook to make good the difference between what had already been paid and $100, if it should desire to discontinue the contract before August 1, 1927, shows this. The motion to dismiss is accordingly denied with exception granted to the defendant and judgment for the sum of $2,083.33 together with interest amounting to $237.50 is directed in favor of the plaintiffs and against the defendant. Settle order.