The Assembly, Inc., Plaintiff, *v.* Jacob A. Giller, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, July 12, 1929.

*Henry Woog*, for the plaintiff.

*Selig Edelman*, for the defendant.

Genung, J.    This is a summary proceeding, commenced June 12, 1929, to dispossess the tenant from two stores on the ground floor of the building known as Nos. 110–112 East Fifty-ninth street, for the non-payment of rent.    The defense interposed by the verified answer is that by the conduct and express declaration of the landlord there was a complete repudiation of its obligations under the lease to this tenant in December, 1928, prior to the accrual of the rent, for the non-payment of which this proceeding is brought; and the assertion of two counterclaims, one for the sum of $20,000 damages predicated upon such repudiation by the landlord, and the second for $5,000 damages for the breach of the covenant of quiet and peaceful enjoyment, by reason of harassment and

annoyance of the tenant by the landlord for a period of years prior to such breach.

On September 1, 1924, a lease was executed between the Assembly, Inc., and Jacob A. Giller, the parties to this proceeding, to the two stores, for a term of eight years and seven months, commencing September 1, 1924, and ending April 30, 1933, at an annual rental of $4,300 to April 30, 1928, and $7,000 for the remaining five years of the term. This tenant had been in possession of these stores under a prior lease from one Paris E. Singer, who was the lessee of the entire building from Nathan and Carrie Kauffmann, the owners of the fee. Singer turned over his entire interest in the said building to Mrs. Hawkesworth (who in turn immediately assigned her lease to the Assembly, Inc., a corporation formed by her for that purpose, and the landlord in this proceeding) upon the identical terms and conditions of his own lease, and it was arranged between Singer and the Assembly, Inc., that the latter would pay the rent for the entire building directly to the Kauffmanns, and pay the taxes upon the building and otherwise perform as tenant of the entire premises the conditions stipulated on the part of the lessee to the entire building.

This arrangement was carried out from 1923 to 1928, when the Assembly, Inc., defaulted in payment of taxes and rent to the Kauffmanns, leading to the dispossess proceedings by the Kauffmanns later referred to.

When the Assembly, Inc., took over the building, it commenced a proceeding against Giller with respect to his then existing tenancy with the result that in the settlement of that litigation the present lease, dated September 1, 1924, was executed. Evidence was introduced by the tenant, upon the trial of this proceeding, of a course of hostility and unjust litigation on the part of this landlord towards him since his tenancy commenced under the present lease from the Assembly, Inc., which resulted in the harassment and annoyance of the tenant, and which caused him serious damage as set forth in the second counterclaim. By the weight of authority in this State, this counterclaim is not sustainable, because the harassment was not followed by the abandonment of the premises by the tenant. (*Boreel* v. *Lawton*, 90 N. Y. 293; *Mayor* v. *Mabie*, 13 id. 151; *Edgerton* v. *Page*, 20 id. 281.) The case of *Paddell* v. *Janes* (90 Misc. 146), in which such a cause of action as that asserted by this counterclaim was sustained, despite the tenant's continuance in possession, was predicated upon certain language which was employed in the express covenant contained in the lease

there under consideration. Here the tenant relies upon the implied covenant. The second counterclaim is, therefore, dismissed.

It appears from the evidence that after the Assembly, Inc., took over the building in 1923, the entire stock interest of the said corporation came into the hands of one Meyer Simon, and that he then assumed, and has since retained, complete control over the assets of the corporation and over the income from the said lease and the rentals and securities received from the several subtenants in the building. Simon dealt with the proceeds of the said lease as if they were his individual property, and prior to January 1, 1929, he had converted the securities of the several subtenants, including the security of this tenant Giller, in the sum of $2,333.33, by mingling them with his own funds, and employing them in his private enterprises. In the early part of 1925, soon after said lease, between the Assembly, Inc., and Giller was executed, the Assembly, Inc., commenced a summary proceeding against Giller in this court, whereby it was sought to dispossess the tenant upon a claim of a breach of condition in the non-payment of water charges claimed to be due from the tenant in the sum of about $300. It was subsequently adjudicated that there was no default or breach of condition on the part of the tenant, the amount of water actually used by the tenant amounting to a trivial sum as compared with the amount claimed, and the tenant having offered to pay a sum in excess of the amount used by him.

In December, 1928, Simon sent Mrs. Hawkesworth, the nominal president of the Assembly, Inc., to Giller's place of business, and she told Giller that the Assembly, Inc., was in financial difficulties; that Mr. Simon had not paid the rent, nor the taxes which were due upon the entire building; that it was only a question of days or weeks before the Assembly, Inc., and all of its subtenants would be dispossessed; that the Assembly, Inc., was " through " and was unable to meet its obligations, and she advised Giller that the only way for him to save his own lease, which was valuable, was to take over the lease of the entire building, and make good Simon's indebtedness for the taxes amounting to over $6,000. She also said that Simon had appropriated the funds collected from the building, and had speculated with them, and was financially irresponsible. Mrs. Hawkesworth was accompanied on this errand by a lawyer. Neither Mrs. Hawkesworth nor this lawyer testified in contradiction of Giller and his wife, who gave testimony with respect to this conversation. Mrs. Hawkesworth was called in

rebuttal and, except for denying an unimportant detail of the conversation as testified to by the Gillers, left the balance of their testimony, as to the essentials of the conversation, entirely uncontradicted.

From the evidence in the case, I find that prior to January 1, 1929, there was a complete repudiation and breach by the landlord of the essential and paramount covenant of his lease with the tenant, in that there was a deliberate refusal to perform the landlord's obligations to the superior landlord, with respect to the payment of the taxes for the entire year of 1928, aggregating over $6,000, and the quarterly payment of rent due on the entire building in November, 1928, aggregating $3,125, which payments were a necessary condition precedent to the maintenance and security of this tenant's continued tenure under his lease; that such refusal to perform was, as regards this tenant, involved with bad faith on the part of the landlord, in that it planned to deprive the tenant of the benefits of his lease, by an attempt to saddle him with the landlord's own obligations with respect to the entire building; and that while the lease of the entire building showed a profit of about $2,000 a year, the landlord, instead of maintaining the lease in good standing to the end of the term thereof, diverted the rentals from the proper application to the payment of the current obligations on the building, to other investments of Simon, without regard to the rights of the subtenants in this building.

" Where one party to an executory contract puts it out of his power to perform, there is an anticipatory breach which gives the other party an immediate right of action for the damages which he suffers thereby." (*Wood* v. *Fisk*, 156 App. Div. 497; affd., 215 N. Y. 233.) In *Kotcher* v. *Edelblute* (250 N. Y. 178), LEHMAN, J., writes for the court: " It is said that performance, by one party to a contract, of stipulated acts, which constitute condition precedent to performance of a counter promise, is waived where the other party to the contract has unequivocally declared by word or act that performance of the condition precedent will not secure performance of the counter promise. (Williston on Contracts, 767.) Actual performance or tender of performance of a condition precedent is, in truth, a vain and useless act under such circumstances."

" The question whether covenants are to be held dependent or independent of each other is to be determined by the intention and meaning of the parties, as expressed by them, and by the

application of common sense, to each case submitted for adjudication." (*Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313.) The sublessee's obligation is dependent upon his lessor's maintenance of his own tenure, so that he may himself be in a position of acting the part of landlord. As was said by the Court of Appeals in *Stillman* v. *Van Buren* (100 N. Y. 439, 445): " Rent reserved to the landlord must be paid as a condition to its continued receipt from an undertenant." It is also said in 16 Ruling Case Law, 705: " According to the modern and better view covenants and stipulations on the part of the lessor and lessee are to be construed to be dependent or independent, according to the intention of the parties and the good sense of the case, and technical words should give way to such intention; courts will not and ought not to construe covenants and agreements as independent, and enforce a performance by the other party, unless there is no other mode of construing the instrument, and unless it clearly appears to have been the deliberate intention of the parties at the time the instrument was executed."

That the obligation on the part of the landlord to protect his tenant's tenure, by meeting his own payments to the superior landlord, goes to the entire consideration of the contract, is clearly apparent from the language of the Court of Appeals in *Matter of Strasburger* (132 N. Y. 128): " If Strasburger had been sane, and had refused to pay the rent to his superior landlord, and thus had refused to protect his covenants with the appellants, the damages for the breach would have been measurable by the rule first stated " (*i. e.*, the value of the unexpired term, less the rents reserved).

It is clear that the test of the breach of the landlord's obligations is his refusal " to protect his covenants " with his tenant. In the usual and ordinary case, this breach only becomes apparent and is established by an actual ouster or eviction. Here we have an express declaration by the landlord that he has, and will continue to " refuse to protect his covenants " with his tenant. It was an anticipatory breach of the covenant, and it was not necessary for the tenant to wait until his actual dispossession from the premises before asserting his defensive right to refuse to pay any further rent, even if it were demanded. In this case the Assembly, Inc., did not even demand the rent, recognizing its tenant's position thereby, and its own prior repudiation of the contract.

After the conversation of December, 1928, above referred to, the tenant's efforts were immediately directed towards the con-

servation of the rents of the several sublessees, so that they might be applied to the current obligations of the building, and also towards the saving of the benefits of his lease by some arrangement with the owners of the fee, who instituted summary proceedings for the removal of all of the tenants and undertenants in the building, by reason of the default of the Assembly, Inc. The said proceedings, which were delayed by the death of Mrs. Kauffmann, the surviving owner of the building, finally resulted in an order of dispossession against all of the tenants in the building, including the parties to this proceeding, which was entered on June 24, 1929, with a stay of execution until nine A. M. of July 1, 1929. The stay expired on the morning of the date of the trial of this proceeding and the subtenants of the Assembly, Inc., are without assurance of any kind as to how long, or upon what terms and conditions they will be permitted to remain upon the premises. The tenant in this proceeding has shown by his testimony that he has made offers of· increased rent to the owner for the continuance of his possession, but that his offers have not as yet been accepted. His future tenancy and the extent of the loss which he may sustain as a result of this landlord's breach are, therefore, uncertain, although the evidence indicates that if the unexpired·term of his lease should be curtailed, his loss will be substantial, since the present market rental value of these·stores is at least twice as much as the rent reserved.

In addition to the landlord's failure to pay the rent and taxes of the building, the dispossess order in the major landlord's proceeding and the evidence in this case reveal that the landlord here has put into possession of portions of the premises several subtenants whose occupancy by reason of the nature of the business carried on by them, constitutes a violation of law, and that such violations constitute an additional ground for the said dispossess order.

The defaults of this landlord also affected the guarantors who guaranteed to Paris E. Singer that Mrs. Hawkesworth or the Assembly, Inc., would perform their obligations under their lease. These guarantors by their counsel, in order to avert further potential liability through the collection of rents from the subtenants by the Assembly, Inc., procured from this landlord a power of attorney in March, 1929, the effect of which was to divest the Assembly, Inc., of its power of collecting rents and to vest such power and the management of the building in Albert B. Ashforth, Inc., designated for that purpose by the guarantors, whose power was expressly

coupled with an interest, so as to make it irrevocable on the part of the Assembly, Inc. This proceeding was instituted by the Assembly, Inc., with Meyer Simon verifying the petition as the agent of the building, although the power of attorney to Albert B. Ashforth, Inc., which was introduced in evidence, and the testimony of the witnesses, establish that at the time of the commencement of this proceeding the power to institute such proceeding resided solely in Albert B. Ashforth, Inc., and that the latter company, and not Simon, was the duly constituted agent in respect to these premises. The attorney representing the guarantors, who was consulted by the Ashforth Company with respect to all questions relating to this building, was not consulted about the institution of this proceeding, and it appears from the evidence that other subtenants in the building, who like this tenant sought to obtain assurance from Albert B. Ashforth, Inc., as to the safety of their rent securities, from any claim of title by the Assembly, Inc., and who have failed to obtain such assurance, were not subjected to any suit or dispossess proceeding.

This court concludes that final order must be rendered for the tenant and that the tenant is also entitled to judgment against the landlord upon the first counterclaim to the extent of $2,333.33, the amount of security which he had deposited with the landlord, and which had been converted by the landlord prior to January 1, 1929, at the time of the repudiation of the landlord's obligations under the lease. (*Matter of Atlas*, 217 App. Div. 38.) The Assembly, Inc., has itself been dispossessed from its lease to the building, and has no other assets. The evidence indicates quite clearly that this tenant's damages by reason of the termination of his lease through the default of his landlord is in excess of the rent of his premises since January 1, 1929, for he has already offered an additional rent of $1,000, and if necessary $2,000 per annum to retain his possession; but the exact extent of such damage cannot definitely be ascertained at the present time. The damages of the tenant to the extent of his rent deposit is definite and certain. Judgment is, therefore, rendered for the tenant in the sum of $2,333.33, the amount of the deposit, with interest thereon of $374.65, amounting to $2,707.98.