**SPECIALTIES DEVELOPMENT CORP.**
**v. C-O-TWO FIRE EQUIP-**
**MENT CO.**

**No. 11084.**

United States Court of Appeals
Third Circuit.

Argued Oct. 22, 1953.

Decided Nov. 5, 1953.

Rehearing Denied Nov. 30, 1953.

2. 193 F.2d 734.

Thomas F. Reddy, Jr., New York City (Pennie, Edmonds, Morton, Barrows & Taylor, R. Morton Adams, New York City, on the brief), for appellant.

Floyd H. Crews, New York City (J. Branton Wallace, Van Arsdale & Wallace, Basking Ridge, N. J., Darby & Darby, New York City, on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action by a licensor of a patent against a licensee for alleged unpaid royalties. The plaintiff recovered in the district court, D.C.N.J.1953, 109 F.Supp. 732, and the defendant's attack here is based upon the proposition that the judge made a mistake in his contract law.

While the controversy centers around a patent, the case involves no federal question since it is simply a suit for payment of money under a license contract. The parties are in federal court on diversity of citizenship only. The federal court, sitting in New Jersey, applies the choice of law rules as the New Jersey state courts have declared them. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

The initial question here is the place of contracting. The defendant suggests that it is California; if not California, it says, the court should apply the contract law of the forum, New Jersey.

■■ We think the suggestion is incorrect. The officials authorized to act for the respective companies met in New York and signed copies of the agreement, one of which was kept by each officer. That, obviously, is sufficient to constitute a signing and delivery of the document. The fact that a copy or copies were taken later to California, for the signature of an attesting witness and the affixing of a corporation seal, does not change the conclusion that the contract was a New York transaction.[1] This was the result reached by the trial judge. It is urged upon us that since all the evidence was documentary, we may re-examine the basis for the finding more critically than if the evidence had come from oral testimony. We need not pursue this line of argument further. We have examined the testimony and think that the trial judge was undoubtedly right.

■ Then, according to the New Jersey rule of Conflict of Laws, it appears that New Jersey looks to the law of the place of contracting which, as already said, is New York. Rhodes & Co. v. Chausovsky, 1948, 137 N.J.L. 459, 60 A. 2d 623; Polyckronos v. Polyckronos, 1939, 8 A.2d 265, 17 N.J.Misc. 250; Fiocchi v. Smith, N.J.Ch.1916, 97 A. 283. We do not need to decide in this case whether this general rule is to be modified if parties intended some other law to govern, for there is here nothing to show such intention.[2] Cf. Mayer v. Roche, 1909, 77 N.J.L. 681, 75 A. 235, 26 L.R.A., N.S., 763.

By the agreement the parties made, the defendant was licensed to use the plaintiff's patent in making fire extinguisher apparatus.[3] Defendant was to pay a stipulated rate of royalties; the plaintiff was to prosecute infringers and to protect a price-maintenance provision which appeared in the contract, the valid-

ity of which neither side has questioned. The license permitted sales in both the United States and Canada. The defendant has paid the plaintiff the claimed royalties on the United States sales but has failed to pay for all the sales made in Canada. It says further that it will not pay the Canadian royalties because the plaintiff failed to carry out its promise to prosecute infringers.

■ At this point certain findings of the trial judge become important. He found that an infringing device was extensively advertised and sold in the Province of Ontario, that the defendant and other licensees complained to the executives of the plaintiff that Randolph Laboratories "were engaged in the manufacture of extinguishers which infringed the patents," and that the plaintiff did nothing about it. The trial judge concluded that the plaintiff's "failure to take appropriate action to enjoin the infringement was a material breach of the license agreement." We agree. Protection against infringers was an essential of the contract for which defendant bargained. Plaintiff argues that the infringements were not substantial, for the alleged infringer, Randolph, had not qualified to do business in Canada at the time of the omissions complained of; further that the defendant did not prove very many Canadian sales. Nevertheless, we think enough was proved to support the conclusion reached by the trial judge.

The single problem in our case then becomes: What is the New York law governing the rights of parties to a contract containing dependent promises where one party has committed a material breach and where the other, knowing of and complaining about the breach, nevertheless continues to operate under it?

**1.** By New York law, a seal is not necessary to effect a contract by a corporation, Lienkauf v. Calman, 1888, 110 N.Y. 50, 17 N.E. 389.

**2.** If there is any expression of intention at all, it is for New York law to govern, for in the arbitration paragraph of the contract it is provided that "Such arbitration shall be governed by the laws of the State of New York."

**3.** The contract was in fact made between defendant's predecessor and plaintiff's assignor but that is immaterial to the question here.

Defendant cites to us New York cases to the effect that one cannot recover damages for breach of contract where he, himself, has not rendered substantial compliance with its terms. This doctrine goes way back to Smith v. Brady, 1858, 17 N.Y. 173, and, as would be expected, has been reiterated many times since. See, e.g., Spence v. Ham, 1900, 163 N.Y. 220, 57 N.E. 412, 51 L.R.A. 238; Bullinger v. Interboro Brewing Co., 1920, 194 App.Div. 205, 185 N.Y.S. 481; Nieman-Irving & Co. v. Lazenby, 1933, 263 N.Y. 91, 188 N.E. 265. But the authorities just mentioned do not, we think, read upon the problem here. Our question is whether the party to a contract against whom a breach is committed can continue to enjoy its advantages without taking its burdens.

The general rule on this situation is set out in Williston on Contracts § 688 (Rev. ed. 1936). It reads as follows: "The principle is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform. * * *"[4]

One would not expect to see the New York decisions depart from a rule which has been applied in such varying situations as to become what Professor Williston calls a "principle." The leading New York case seems to be Rosenthal Paper Co. v. National Folding Box & Paper Co., 1919, 226 N.Y. 313, 123 N.E. 766. This was relied upon by the district court and the decision on which the suggestion was based in argument that New York law may be different from that in other states. Since this authority seems to be the turning point of the dispute between the parties here it is well to quote the court's statement of the principles applicable:

"Where a party to an executory contract, containing mutual obligations, disables himself from performing it during its performance, the other party has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach, or to wait until there was to be final performance. * * * The other party may, however, decline to deem the contract terminated and may insist that it shall continue in force up to the time fixed for its final performance. A contract thus kept alive exists for the benefit of both parties. The party who refuses to regard it as terminated by the breach remains liable to all his obligations and liabilities under it." 226 N.Y. at page 324, 123 N.E. at page 769.

In this case the plaintiff did recover royalties although there had been an assignment by the owner of the patent contrary to the terms of the agreement made with the defendant. The defendant (1) had not known of the assignment during the life of the contract and (2) had received all the advantages coming to him under the contract during the entire period for which it ran. And in the case before us, the defendant did know of the plaintiff's failure to prosecute infringers for it complained about it. Nevertheless, it continued to manufacture its fire extinguishers and use the plaintiff's patent in so doing, something which it would not have had a right to do without a license.

■ We do not find anything in this or any other New York case which we have located to throw doubt upon the general proposition that one against whom a material breach is committed must make up his mind what he is going to do about it, and that if he goes ahead with performance he is not excused from liability under the terms of the contract. See Thuman v. Clawson & Wilson Co., 1925, 211 App.Div. 507, 207 N.Y.S. 565 and cases cited therein.

The judgment of the district court will be affirmed.

---

**4.** See also § 687 and Restatement, Contracts § 309 quoted by Williston in the sections above cited.